**Rudolf A. NORMAN and Thomas G. Bassett, Plaintiffs–Appellants,**

v.

**NIAGARA MOHAWK POWER CORPORATION, Defendant–Appellee.**

No. 481, Docket 88–7496.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1988.

Decided April 27, 1989.

---

* The Hon. Robert W. Sweet, United States District Judge for the Southern District of New York, sitting by designation.

David K. Colapinto and Michael D. Kohn, Washington, D.C., (Kohn & Associates and Stephen M. Kohn, Washington, D.C., on the brief), for plaintiffs-appellants.

Robert W. Kopp, Syracuse, N.Y. (Bond, Schoeneck & King and Robert A. LaBerge, Syracuse, N.Y., of counsel), for defendant-appellee.

Before VAN GRAAFEILAND, WINTER and MAHONEY, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

. Rudolf Norman and Thomas Bassett appeal from a judgment of the United States District Court for the Northern District of New York (Cholakis, J.) dismissing under Fed.R.Civ.P. 12(b) their RICO complaint against their employer, Niagara Mohawk Power Corporation ("Niagara"). For the reasons that follow, we affirm.

Niagara is a substantial part owner of the Nine Mile 2 nuclear power plant being constructed on the south shore of Lake Ontario near Oswego, New York. The plant is subject to regulation by both the Nuclear Regulatory Commission ("N/R Commission") and the New York Public Service Commission ("P/S Commission"). Regulations adopted by the N/R Commission pursuant to the Energy Reorganization Act of 1974, 42 U.S.C. § 5801 *et seq.*, require that certain quality assurance programs be adopted to ensure safety in the construction and operation of a plant such as Niagara's. *See* 10 C.F.R. Part 50, Appendix B. The regulations provide for periodic audits to be conducted to verify compliance with the quality assurance programs and to determine their effectiveness. *Id.* § XVIII. During the early nineteen-eighties, appellants worked as quality assurance auditors for Niagara.

Section 206 of ERA, 42 U.S.C. § 5846, requires that persons having notice of statutory violations or safety defects shall immediately notify the N/R Commission. Section 210(a), 42 U.S.C. § 5851(a), provides in substance that no employer may discharge or otherwise discriminate against any employee with respect to his compensation, terms, conditions, or privileges of employment because the employee [blew the whistle] on the employer. Section 210(b), 42 U.S.C. § 5851(b), provides that any employee who believes that he has been improperly so discharged or discriminated against may file a complaint with the Secretary of Labor, who is given the power to provide broad relief.

Appellants contend that, because they attempted to bring various violations and defects to the attention of Niagara's management and the N/R Commission, they were subjected to harassment and intimidation tactics, including, but not limited to, false performance evaluations as to their individual jobs, reassignment in positions amounting to demotions, and continued disparaging reports by Niagara, damaging to their future careers. In 1985, Norman filed two section 210(b) complaints with the Department of Labor in which he alleged a retaliatory course of conduct or series of continuous violations by Niagara. Both complaints were dismissed because of Norman's failure to comply with the 30-day filing limitation period of section 210(b).

In 1985, Norman also joined two other auditors in a lawsuit in the United States District Court for the Northern District of New York alleging the same sort of harassment he alleges in the present action and seeking relief under both section 210 and the Civil Rights Statutes, 42 U.S.C. §§ 1983 and 1985. On May 28, 1985, then Chief Judge Howard Munson of the Northern District dismissed the complaint on Niagara's Rule 12(b) motion, stating that "Congress granted no private cause of action to redress grievances by the nuclear industry employees in a Federal Court", and that section 210 "provides a comprehensive administrative procedure under the auspices of the Secretary of Labor which cannot be circumvented by resort to Federal Court in

the first instance...." He added that "[t]he Civil Rights Statutes may not serve as a vehicle for avoiding the procedures established in the Energy Reorganization Act", and that "the rights granted by the statute [section 210] and the procedural devices to remedy their violation are inextricably linked within the same statute."

Appellant Bassett also filed two section 210 complaints with the Department of Labor in 1985, both of which were dismissed. The Administrative Law Judge who directed the dismissal found, among other things, that Niagara was not conspiring to harass or retaliate against Bassett.

In 1986, appellants decided to have another go at Niagara, this time relying on ubiquitous RICO. In a 96–paragraph complaint, that barely, if at all, meets the requirements of Fed.R.Civ.P. 9(b), see *Official Publications, Inc. v. Kable News Co.,* 692 F.Supp. 239, 245–46 (S.D.N.Y.1988), appellants allege that Niagara engaged in a pattern of racketeering in furtherance of a scheme to conceal from the P/S Commission, the N/R Commission and Niagara's shareholders largely unspecified construction deficiencies, excessive costs and management failures. Appellants seek to make themselves victims of this scheme by alleging that Niagara "intend[ed] to ruin" anyone who, through the faithful performance of his duties, threatened Niagara's ability to hide the true state of affairs.

In dismissing the complaint, Judge Cholakis held that "once all the fat is trimmed away, we are left with little more than the allegations that the participation of Norman and Bassett in, and diligent conduct of, their duties in the Quality Assurance Program at [Niagara], resulted in a course of conduct of retaliation by the defendant." The court continued, "these claims, 'whistle blower claims', are specifically covered within the confines of the ERA, 42 U.S.C. § 5851, requiring an aggrieved employee to file a complaint with the Secretary of Labor." The district court also held that Norman "is barred at this time from relitigating what are essentially identical claims to those heard before Judge Munson in May of 1985."

As will be discussed *infra,* we agree completely with the district court's decision so far as it went. However, we believe there are additional compelling reasons why the complaint properly was dismissed, and we may affirm on any grounds supported by the record. See *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886–87 (2d Cir.1987). Accordingly, we will address several other grounds for dismissal urged by Niagara that the district court found unnecessary to reach.

## FAILURE TO STATE A CLAIM AND LACK OF SUBJECT MATTER JURISDICTION

■ Congress has provided a civil remedy for any person injured in his business or property "by reason of" a RICO violation. 18 U.S.C. § 1964(c). This provision, properly interpreted, means that a "plaintiff only has standing if ... he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P. R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). A defendant is not liable for treble damages to everyone he might have injured by conduct other than that prohibited by RICO. *Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 398 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); (also quoted with approval in *Sedima, supra,* 473 U.S. at 497, 105 S.Ct. at 3285). The phrase "by reason of" requires that there be a causal connection between the prohibited conduct and plaintiff's injury. *Bankers Trust Co. v. Rhoades,* 741 F.2d 511, 516 (2d Cir.1984), *vacated on other grounds,* 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985). See also *Cullom v. Hibernia Nat'l Bank,* 859 F.2d 1211, 1214 (5th Cir.1988); *Pujol v. Shearson/American Express, Inc.,* 829 F.2d 1201, 1205 (1st Cir.1987); *Nodine v. Textron, Inc.,* 819 F.2d 347, 348–49 (1st Cir.1987); *Morast v. Lance,* 807 F.2d 926, 932–33 (11th Cir.1987); *Burdick v. American Express Co.,* 677 F.Supp. 228, 229 (S.D.N.Y.1988), *aff'd,* 865 F.2d 527 (2d Cir.1989). Such causal connection is completely lacking in the instant case.

■ Appellants' theory of liability is strikingly similar to that advanced by the plaintiff in *Cullom v. Hibernia Nat'l Bank, supra,* 859 F.2d at 1213:

Cullom filed suit against Hibernia and SNB in April of 1987, alleging that Hibernia and SNB engaged in or conspired to engage in several counts of mail and securities fraud. Cullom further alleged that he was constructively discharged because he refused to participate in illegal activity, that he suffered damages due to his constructive discharge, and that because of his constructive discharge and his damages, he had standing to sue under RICO and should be afforded treble damages.

Because both Judge King who wrote for the Fifth Circuit and District Judge Feldman who wrote the opinion that was affirmed, 666 F.Supp. 88 (E.D.La.1987), explained cogently and in detail why persons such as appellants herein have no standing under RICO, we see no reason to repeat what they already have said. Suffice it to say, we agree.

## EXCLUSIVENESS OF REMEDY

■ Section 210 of the Energy Reorganization Act provides a remedy for an employee who has been discriminated against or discharged for making safety complaints. Section 210 also creates a procedural framework for vindication of this right. An aggrieved employee may file a complaint with the Secretary of Labor within thirty days after a violation. The Secretary must investigate the claim and either deny it or take remedial action within ninety days. Parties may seek review of the Secretary's decision in the United States Court of Appeals. The Secretary may seek civil enforcement of its order against an employer in federal court.

As interpreted by the Fifth and Tenth Circuits, the administrative remedy provided in section 210 is exclusive. *Willy v. Coastal Corp.,* 855 F.2d 1160, 1169 (5th Cir.1988) ("[T]he 'whistleblower' provisions expressly limit the remedy to an administrative claim with the Secretary"); *Kansas Gas and Electric Co. v. Brock,* 780 F.2d

1505, 1508 (10th Cir.1985), *cert. denied,* 478 U.S. 1011, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986) ("[S]ection 5851 of the ERA states that exclusive jurisdiction in employment discrimination matters is vested by Congress in the Secretary of Labor"). *See also Norris v. Lumbermen's Mutual Casualty Co.,* 687 F.Supp. 699, 703 (D.Mass. 1988) ("[T]he statute provides an exclusive federal remedy for employee protection in this field."). Like Judges Munson and Cholakis, we agree with this interpretation.

The Court in *Kansas Gas, supra,* pointed out that, pursuant to a memorandum of agreement between the Department of Labor and the N/R Commission, the Department of Labor agrees to notify the N/R Commission of any section 210 complaint filed with it and of any hearings to be conducted, and the N/R Commission agrees to provide the Department of Labor with whatever technical assistance it requires. 780 F.2d at 1509–10 (citing 47 Fed. Reg. 54585 (1982)). In a field as specialized and technical as that of nuclear energy, the importance of this interplay between the two agencies cannot be overemphasized. *See Wisconsin Department of Industry, Labor and Human Relations v. Gould, Inc.,* 475 U.S. 282, 286, 106 S.Ct. 1057, 1061, 89 L.Ed.2d 223 (1986); *Amalgamated Ass'n of Street, Electric Ry & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 287–88, 91 S.Ct. 1909, 1918–19, 29 L.Ed.2d 473 (1971); *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 242–43, 79 S.Ct. 773, 778–79, 3 L.Ed.2d 775 (1959).

We are not dealing here with a collateral matter that is only peripherally related to the safety concerns implicit in section 210. *See Farmer v. United Brotherhood of Carpenters & Joiners,* 430 U.S. 290, 296–97, 97 S.Ct. 1056, 1061–62, 51 L.Ed.2d 338 (1977); *Connell Construction Co. v. Plumbers & Steamfitters Local Union No. 100,* 421 U.S. 616, 626, 95 S.Ct. 1830, 1837, 44 L.Ed.2d 418 (1975). Artful invocation of controversial civil RICO, particularly when inadequately pleaded, cannot conceal the reality that the gravamen of the complaint herein is section 210 harassment. *See Buscemi v. McDonnell Douglas Corp.,*

736 F.2d 1348, 1351–52 (9th Cir.1984). We agree with the district court that appellants' 96–paragraph complaint, distilled to its essence, alleges no more than that appellants were discriminated against for having made complaints about safety at a nuclear plant—a section 210 claim.

## RES JUDICATA

Citing *In re Teltronics Services, Inc.,* 762 F.2d 185 (2d Cir.1985), the district court held that Chief Judge Munson's dismissal of Norman's 1985 complaint was res judicata in the instant case. Recognizing that no RICO claim was alleged in the earlier action, the district court quoted the holding in *Teltronics* (762 F.2d at 193) that "[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata." Although some of the acts of which Norman complains may have occurred in the one year interval between Judge Munson's dismissal of the 1985 action and the bringing of the instant suit in 1986, it is readily apparent that they were all part of the same cause of action and arose from a "single core of operative facts." *Car Carriers, Inc. v. Ford Motor Co.,* 789 F.2d 589, 596 (7th Cir.1986). Judge Munson held that Norman's complaint had to be dismissed because section 210 provided the sole remedy for the harassment of which Norman complained. Because the factual and legal issues before Judge Cholakis did not differ materially from those presented to Judge Munson, Judge Cholakis's finding of res judicata was correct. *See Montana v. United States,* 440 U.S. 147, 162, 99 S.Ct. 970, 978, 59 L.Ed.2d 210 (1979); *Semler v. Psychiatric Institute,* 575 F.2d 922, 927–31 (D.C.Cir.1978).

Although Judge Cholakis did not rule on Niagara's contention that the Administrative Law Judge's finding of no harassment or retaliation against Bassett was res judicata on this issue, we conclude that it was. The matter properly was before the ALJ, and the parties had ample opportunity to be heard. *See United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966); *Spancrete Northeast, Inc. v. International Ass'n of Bridge, Structural and Ornamental Ironworkers,* 514 F.Supp. 326, 331 (N.D.N.Y.), *aff'd,* 679 F.2d 874 (2d Cir.1981). Because four years have elapsed since the ALJ's decision, with no stay having been sought, we give little weight to the fact that there has been no judicial review of that decision. *See Barnes v. Oody,* 514 F.Supp. 23, 25 (E.D. Tenn.1981); *see also* ERA section 210(c)(2), 42 U.S.C. § 5851(c)(2).

For all of the foregoing reasons, the judgment of the district court is affirmed with costs to the appellee.

## ADDENDUM

Notice of appeal to this Court was filed on June 9, 1988. After several extensions of time were granted, appellants' brief was filed on October 3, 1988. Appellants' counsel concedes that he had decided prior to that time to move for disqualification of defense counsel. However, in appellant counsel's own words, "when it became apparent that we could not file both the substantive brief and a motion to disqualify by October 3, 1988, we felt compelled to concentrate our efforts on our opening brief and *only then* to switch focus to disqualification." (emphasis supplied)

Niagara's brief was filed on November 2, 1988, and the case was set for argument on November 30, 1988. On November 9, appellants filed a motion for disqualification or remand. We heard argument of the appeal and the motion on the same day and allowed additional time for briefing.

Examination of the record and the motion papers together with information elicited at oral argument reveal that the litigation between Niagara and its disgruntled auditors has been rancorous, with charges and countercharges being made from the outset. Indeed, when Judge Munson granted Niagara's motion to dismiss the 1985 action, he also denied the plaintiffs' motion to disqualify Niagara's attorneys. Taking inspiration from a well known phrase, Judge Munson described the plaintiffs' charges as a "hurricane in a coffee

pot." So far as we can determine, that description remains apt. In view of the additional considerations that what is involved in this appeal are simply questions of law that have been thoroughly, indeed over-thoroughly briefed by appellants' present counsel,[1] and the delay of counsel in moving for disqualification, the motion is denied with separate motion costs to appellee.

---

1. Fed.R.App.P. 28(g) provides that the 25–page limit on reply briefs does not include "any addendum containing statutes, rules, regulations, etc." A 24–page brief filed by appellants' counsel in another action does not constitute such an addendum.