Lisa M. AYRES, on behalf of herself and other persons similarly situated, Ronald L. Swann, Administrator of the Estate of Richard W. Swann, et al., Plaintiffs-Appellees,

v.

GENERAL MOTORS CORPORATION and Delco Electronics Corporation, Defendants-Appellants.

No. 98-8696.

United States Court of Appeals,

Eleventh Circuit.

Nov. 29, 2000.

Appeal from the United States District Court for the Northern District of Georgia.(No. 96-02476-1-CV-GET), G. Ernest Tidwell, Judge.

Before ANDERSON, Chief Judge, and TJOFLAT and FAY, Circuit Judges.

ANDERSON, Chief Judge:

This is an interlocutory appeal by Defendants-Appellees General Motors Corporation ("General Motors") and Delco Electronics Corporation ("Delco") of the district court's denial of their motion for summary judgment. The district court certified the appeal as one involving a question of law as to which there is substantial ground for difference of opinion and with respect to which an immediate appeal from the order may materially advance the ultimate termination of this litigation; thus, we have appellate jurisdiction under 28 U.S.C. § 1292(b). For the reasons stated below, we reverse.

Lisa Ayres, George Collins, and Helen Woodson ("Plaintiffs") each purchased an automobile which was manufactured by General Motors and contained a GMP-4 Electronic Control Module ("ECM") manufactured by Delco.[1] Each of these plaintiffs purchased the automobile as a used automobile. These Plaintiffs[2] brought suit against General Motors and Delco ("Defendants") under Georgia's civil RICO statute,

---

[1] Plaintiffs seek class certification representing the 4.5 million consumers with vehicles containing the defective ECM, but as of yet no class has been certified.

[2] Ronald Swann, as executor of his father Richard Swann's estate, also was a plaintiff below. The Defendants state that discovery conducted after the preparation of the record for appeal conclusively shows that the vehicle purchased new by Richard Swann did not contain the defective ECM and the Plaintiffs do not name Swann in their appellate brief. However, in light of our ultimate disposition of this appeal, whether Swann's vehicle did or did not contain the ECM in question is immaterial to the resolution of this case and we therefore do not address it.

O.C.G.A. § 16-14-1 *et seq.,* in the Superior Court of Fulton County, Georgia.[3]  The Plaintiffs claim that the ECMs are defective and that this defect can cause engine stalling, engine surging, erratic operation and other performance problems which could result in an unsafe situation.  In addition, the Plaintiffs claim that the Defendants knew of the defect but fraudulently concealed it because of the great expense in remedying the defect.  This fraudulent concealment, they argue, caused them injury, in particular the resultant diminution in the value of their cars and the expense of assorted repairs allegedly related to the defect.  However, the Plaintiffs have identified no misrepresentation made by the Defendants to them related to the alleged defect; in fact, the Defendants made no communications at all to the Plaintiffs.[4]  The Plaintiffs complain that the Defendants failed to disclose the defect to them.

The Defendants removed the action to the United States District Court for the Northern District of Georgia and moved for summary judgment.  The district court denied summary judgment on the Georgia RICO claims.  In particular, the court found that the Plaintiffs established, at least for summary judgment purposes, that the Defendants had violated the federal mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341, 1342, which are predicate offenses constituting racketeering under Georgia's RICO statute.  The district court held that "[n]on-disclosure of information can be a violation of the mail fraud statute when a party has some independent duty to disclose."  The court then concluded that the National Traffic and Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. § 30118 *et seq.,* created such an independent duty for the Defendants to disclose alleged safety defects to the Plaintiffs and that the Defendants' failure to disclose constitutes mail and wire fraud, which in turn forms the basis of the Georgia civil RICO claim.

As a preliminary matter, we address Plaintiffs' motion to dismiss for lack of jurisdiction, asserting that the district court lacked jurisdiction when Defendants removed.  Removal is proper when a federal court would have original jurisdiction.  *See* 28 U.S.C. § 1441(a).  When the Defendants removed in September 1996, the Plaintiffs moved for remand.  The district court denied this motion.  It concluded that original

---

[3]In addition to the Georgia civil RICO claim, the Plaintiffs brought additional state law claims for fraud and deceit and breach of warranty.  The district court granted the Defendants' summary judgment motion with respect to the fraud and deceit and breach of warranty claims.  This grant of summary judgment is not on appeal here.

[4]The Plaintiffs assert that the Defendants engaged in a "pattern and practice of fraudulent suppression and deceit" but do not identify any misrepresentations.  In light of the requirement of Fed.R.Civ.P. 9(b) that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," we conclude Plaintiffs' assertions mean no more than that the Defendants did not disclose the defect to the Plaintiffs or attempt to remedy the defect.

jurisdiction, in this case diversity jurisdiction, existed under 28 U.S.C. § 1332 because the parties were diverse and the amount in controversy requirement was satisfied by aggregating the punitive damages as permitted by *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353 (11th Cir.1996). Although the original complaint was filed in December 1995, the district court found that the removal was timely because prior to *Tapscott,* which was decided after Plaintiffs filed their complaint, the Defendants could not have aggregated punitive damages to reach the amount in controversy requirement.

During the course of this appeal, the Eleventh Circuit in *Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir.2000), held that the binding former Fifth Circuit decision, *Lindsey v. Alabama Tel. Co.,* 576 F.2d 593 (5th Cir.1978),[5] controlled the issue of whether or not punitive damages can be aggregated for amount in controversy purposes and held that such aggregation is not permitted. *See Cohen,* 204 F.3d at 1073-76. Accordingly, the *Cohen* Court abrogated *Tapscott* under the prior precedent rule and held that punitive damages must be divided by the number of class members and attributed to each member of the class. Thus, the district court's aggregation of punitive damages as permitted by *Tapscott* is no longer a sound basis for jurisdiction.

Nonetheless, we believe that there is a sound basis for removal jurisdiction. In particular, 28 U.S.C. § 1441(b) provides removal jurisdiction for "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." *See also* 28 U.S.C. § 1331. In *Gully v. First National Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), Justice Cardozo explained:

> How and when a case arises "under the Constitution or laws of the United States" has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto, and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.

*Id.* at 112-13, 57 S.Ct. at 97-98. Although a case may arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law," *Franchise Tax Board v.*

---

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

*Construction Laborers Vacation Trust,* 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983), "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 813, 106 S.Ct. 3229, 3234, 92 L.Ed.2d 650 (1986).

Such federal-question jurisdiction is available here because, as this opinion makes clear below, a violation of the federal mail and wire fraud statutes is an essential element of the Plaintiffs' cause of action, the proof of which involves resolution of a substantial, disputed question of federal law.[6] Again as made clear below, resolution of this case depends entirely on interpretation of the federal mail and wire fraud statutes and their interaction with the Safety Act. *See Jairath v. Dyer,* 154 F.3d 1280, 1282 (11th Cir.1998) ("[F]ederal-question jurisdiction may also be available if a substantial, disputed question of federal law is a necessary element of a state cause of action."); *Ormet Corp. v. Ohio Power Co.,* 98 F.3d 799, 806 (4th Cir.1996) (recognizing that, even though a cause of action may be created by state law, it may involve the "resolution of a federal question sufficiently substantial to arise under federal law within the meaning of 28 U.S.C. § 1331"). Plaintiffs' Fourth Amended and Recast Complaint claims that "[t]he defendants have repeatedly used the mails and wires to perpetrate their scheme of fraudulent concealment of the defects with engine control modules" and bases the Georgia RICO claim on Defendants' conspiracy to "deprive Plaintiffs of money by multiple illegal acts which involved use of the mails and wires and which constitute a pattern of racketeering activity in violation of the Georgia RICO Act."[7] Examination of the Georgia RICO statute,

---

[6]We reject Plaintiffs' argument that, because Defendants originally based removal on diversity jurisdiction, it is too late for them to raise the issue of federal question jurisdiction on appeal due to the thirty day limitation set forth in 28 U.S.C. § 1446(b). All of the cases Plaintiffs cite in support of this argument differ substantially from the case *sub judice* because the district courts in those cases did not consider the merits of the case before ordering a remand due to an untimely removal. In this case, however, the district court considered the merits of the case when it granted summary judgment on certain of Plaintiffs' claims and refused to grant summary judgment on the Georgia RICO claim. Considering the interests of "finality, efficiency, and economy," the Supreme Court has held that a district court's failure to remand a case improperly removed "is not fatal to the ensuing adjudication if federal jurisdictional requirements are met at the time judgment is entered." *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 64-75, 117 S.Ct. 467, 471-76, 136 L.Ed.2d 437 (1996). Considering these same interests, we believe that to remand this case which satisfies all federal jurisdictional requirements to state court "would impose an exorbitant cost on our dual court system, a cost incompatible with the fair and unprotracted administration of justice." *Id.* at 77, 117 S.Ct. at 477.

[7]We are not troubled by the fact that this elaboration of the basis of the Georgia RICO claim was added by a post-removal amendment of the complaint. The complaint at the time of the removal stated the Georgia RICO cause of action without identifying the predicate acts. The subsequent amendment makes clear that, in a well-pleaded complaint, Plaintiffs' cause of action contains, as an essential element, a federal issue, *i.e.,* whether the Defendants violated the federal mail and wire fraud statutes. *See* 14B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3732, at 333 (3d ed. 1998)

*see infra* n. 13, and Plaintiffs' argument makes it abundantly clear that this part of their complaint refers to the federal right, enforceable through the federal RICO statute, to be free from violations of the federal mail and wire fraud statutes.[8] Thus, establishing a violation of the federal mail and wire fraud statutes is an essential element of Plaintiffs' cause of action.[9] We note that the instant situation—in which Plaintiffs must prove federal crimes involving a violation of the federal mail and wire fraud statutes to satisfy the necessary predicate acts of their Georgia RICO cause of action—would seem to fall squarely within the language of *Gully* and *Franchise Tax Board,* in which the Supreme Court indicated that it was well established that federal question jurisdiction exists where a plaintiff's cause of action has as an essential element the existence of a right under federal law which will be supported by a construction of the federal law concluding that the federal crime is established, but defeated by another construction concluding the opposite. However, to find federal question jurisdiction in this case, we need not go so far as to hold that *every* state RICO cause of action which depends upon proving, as necessary predicate acts, a violation of the federal mail and wire fraud statutes establishes federal question jurisdiction.[10] The particular controversy in this case may very well make

---

("[R]emoval will be held proper when the plaintiff has concealed a legitimate ground of removal by .... inadvertence, or artful pleading.... [T]he plaintiff may be said to have engaged in 'artful pleading' in particular when he pleads ... a state cause of action the merits of which turn on an important federal question."); *cf. In re Uniroyal Goodrich Tire Company,* 104 F.3d 322, 324 (11th Cir.1997) ("The untimeliness of a removal is a procedural, instead of a jurisdictional, defect."). And, in any event, once the complaint was amended it could have been removed. *See* 28 U.S.C. § 1446(b).

[8]We reject Plaintiffs's argument that *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), precludes federal-question jurisdiction because there is no private right of action under the federal mail and wire fraud statutes. Plaintiffs are correct that *Merrell Dow* holds that a claim does not arise under federal law where "a complaint alleg[es] a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation." *Id.* at 817, 106 S.Ct. at 3237; *see id.* at 812, 106 S.Ct. at 3234 ("The significance of the necessary assumption that there is no federal cause of action thus cannot be overstated."). Plaintiffs are incorrect, however, when they contend that the federal mail and wire fraud statutes do not have a private right of action. In fact, these federal statutes are enforceable through a private federal RICO action in the same manner that the Plaintiffs attempt to enforce them through a private Georgia RICO action. *See* 18 U.S.C. §§ 1961(1)(B), 1962, 1964(c).

[9]We note that our conclusion, explained below, that the Plaintiffs fail to establish a violation of the federal mail and wire fraud statutes, in which case their Georgia RICO cause of action fails as would any federal RICO cause of action, does not deprive the court of subject matter jurisdiction. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) ("Jurisdiction, therefore, is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction."); *M.H.D. v. Westminster Schools,* 172 F.3d 797, 802 n. 12 (11th Cir.1999)

[10]Thus, we do not so hold.

this case one of those exceptional cases requiring that we decide "a federal question substantial enough to confer federal question jurisdiction." *City of Huntsville,* 24 F.3d at 174.

As indicated below, this case requires that we decide whether or not a breach of the disclosure duty under the Safety Act constitutes a federal mail and wire fraud crime. We conclude that this federal question constitutes a federal question which may be substantial enough to confer federal question jurisdiction. The magnitude of the federal question at issue in this case is at least comparable to that of other federal questions which courts have found sufficient to confer federal question jurisdiction. *See Ormet,* 98 F.3d at 807 (holding that resolution of a contractual dispute requiring the interpretation and application of the Clean Air Act was sufficiently substantial to justify invocation of federal question jurisdiction given the important federal interest in the Acid Rain Program); *Milan Express Co., Inc. v. Western Sur. Co.,* 886 F.2d 783, 787 (6th Cir.1989) (holding that plaintiffs' claims, in which they sought proceeds of surety bonds prescribed by the Interstate Commerce Commission, should be heard in a federal forum due to the federal interest in the regulation of interstate commerce); *West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.,* 815 F.2d 188, 196 (2nd Cir.1987) (concluding that the federal element in plaintiffs' state cause of action was sufficiently substantial to confer federal question jurisdiction because, "[i]n construing the Condominium Relief Act in a state cause of action, the federal issue is decisive because upon that Act's construction the vindication of rights and definition of relationships created by federal law depends"). The federal question at issue in this case, whether the alleged violations of the Safety Act constitute federal mail and wire fraud crimes, is a matter of considerable magnitude and substantial federal interest.

We find federal question jurisdiction in this case because the case involves both (1) the necessity for Plaintiffs to prove, as an essential element of their state law cause of action, the existence of federal mail and wire fraud crimes as predicate acts, which crimes would be enforceable in a federal civil RICO cause of action; and (2) the fact that proof of the alleged federal mail and wire fraud crimes involves a very substantial federal question.[11]

For the foregoing reasons, we conclude that the district court had subject matter jurisdiction, and we

---

[11]Because we rely on *both* of the facts mentioned in the text, we need not in this case decide whether either, by itself, is sufficient to confer federal question jurisdiction.

decline to order a remand to state court. Accordingly, Plaintiffs' motion to dismiss is denied.[12]

We now turn to the merits of this case. The district court's denial of summary judgment is reviewed *de novo,* with all facts and reasonable inferences therefrom reviewed in the light most favorable to the nonmoving parties. *See Carnival Brand Seafood Co. v. Carnival Brands, Inc.,* 187 F.3d 1307, 1309 (11th Cir.1999). Summary judgment was due to be granted only if the forecast of evidence before the district court showed that there was no genuine issue as to any material fact and that the moving parties, *i.e.,* General Motors and Delco, were entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

As a simple matter of statutory incorporation, federal mail and wire fraud are predicate acts of racketeering under the Georgia civil RICO statute, as they are under the federal RICO statute.[13] Therefore, the critical question is whether the Defendants have violated the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343.[14] We believe they have not. In *Pelletier v. Zweifel,* 921 F.2d 1465, 1498 (11th Cir.1991), this Court explained that "[m]ail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." It is undisputed that, if such a scheme exists here, the Defendants used the mails and wires in furtherance of that scheme. Therefore, the Plaintiffs must show a scheme to defraud. "Under the mail and wire fraud statutes, a plaintiff only can show a scheme to defraud if he proves that some type of deceptive conduct occurred." *Id.* at 1500.

As noted, the Plaintiffs have identified no affirmative misrepresentation on the part of the Defendants. However, Plaintiffs argue that the Defendants' failure to disclose the information they possessed about the

---

[12]We recognize that there are district court cases which suggest that a complaint asserting violations of the federal mail and wire fraud statutes as predicate acts to Georgia's RICO statute is not sufficiently substantial to confer federal question jurisdiction. *See Graham Commercial Realty, Inc. v. Shamsi,* 75 F.Supp.2d 1371 (N.D.Ga.1998); *Patterman v. Travelers, Inc.,* 11 F.Supp.2d 1382 (S.D.Ga.1997). Nothing in those cases suggests a federal question of the magnitude involved here, and thus they are distinguishable. We express no opinion as to their correctness. *See supra* n. 10 and accompanying text.

[13]In particular, O.C.G.A. § 16-4-3(9)(A) of the Georgia RICO statute states that " '[r]acketeering activity' means to commit ... any crime which is chargeable by indictment under the following laws of this state: ... (xxix) Any conduct defined as 'racketeering activity' under 18 U.S.C. Section 1961(1)(A), (B), (C), and (D)," and 18 U.S.C. § 1961(1)(B), part of the federal RICO statute, states that " 'racketeering activity' means any act which is indictable under ... [18 U.S.C.] section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud)."

[14]Both §§ 1341 and 1343 state in pertinent part that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud ... shall be fined under this title or imprisoned not more than five years, or both."

ECM did violate the mail and wire fraud statutes. Plaintiffs rely primarily upon the theory that nondisclosure of material information can constitute a violation of the mail and wire fraud statutes where a defendant has a duty to disclose. Ample case law supports Plaintiffs' legal theory. *See, e.g., United States v. Brown,* 79 F.3d 1550, 1557 (11th Cir.1996) (holding that nondisclosure can violate the federal fraud statutes where a special relationship of trust, such as a fiduciary relationship, requires disclosure of material facts); *United States v. Waymer,* 55 F.3d 564, 571 (11th Cir.1995) ("A defendant's breach of a fiduciary duty may be a predicate for a violation of the mail fraud statute where the breach entails the violation of a duty to disclose material information.... An affirmative duty to disclose need not be explicitly imposed; it may instead be implicit in the relationship between the parties.").[15]

Applying the foregoing theory to the facts of this case, the Plaintiffs argue that the Defendants had a duty to disclose the ECM defect under the Safety Act, and that their failure to do so violated the mail and wire fraud statutes, thus satisfying the predicate acts of racketeering under Georgia's civil RICO statute. The viability of this argument rests upon two assumptions: first, that the Defendants did have a duty under the Safety Act to disclose the information possessed by the Defendants with respect to the ECM, and second, assuming such a duty, that a breach of this duty would constitute mail or wire fraud. We assume *arguendo* that both General Motors and Delco did have such a duty under the Safety Act.[16] Thus, the crucial issue

---

[15]In *United States v. Brown,* 79 F.3d 1550 (11th Cir.1996), we stated: "As we have pointed out, long-established common law fraud concepts inform—but do not control—our discussion of the evidence necessary to support a conviction under the mail fraud statute, especially in light of the requirement that federal criminal statutes be interpreted narrowly." *Id.* at 1559; *see also Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 1840-41, 144 L.Ed.2d 35 (1999) (relying on the rule that Congress intends to incorporate the well-settled meaning of the common-law terms it uses to hold that materiality of falsehood is an element of the federal mail and wire fraud statutes). An examination of the common law with respect to when a failure to disclose is fraudulent also supports the proposition that a nondisclosure of material information can constitute fraud when there is a duty to disclose. In *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), the Supreme Court explained:

> At common law, misrepresentation made for the purpose of inducing reliance upon the false statement is fraudulent. But one who fails to disclose material information prior to consummation of a transaction commits fraud only when he is under a duty to do so. And the duty to disclose arises when one party has information "that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them."

*Id.* at 227-28, 100 S.Ct. at 1114 (quoting Restatement (Second) of Torts § 551(2)(a) (1976)).

[16]The Safety Act requires a manufacturer of a motor vehicle or replacement equipment to "notify the Secretary [of Transportation] by certified mail, and the owners, purchasers, and dealers of the vehicle or equipment as provided in § 30119(d) of this section, if the manufacturer (1) learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety." 49 U.S.C. § 30118(c). In this summary judgment posture, we assume that this duty was triggered for both

before us is whether a breach of such duty to disclose would constitute mail or wire fraud. For the reasons that follow, we conclude that the Safety Act was not meant to create the kind of duty, a breach of which would create criminal liability or civil liability under RICO statutes.

The Safety Act establishes its own extensive array of administrative remedies for a violation of its notification obligations. For example, the Secretary of Transportation can determine that a defect exists and order the manufacturer to notify and/or "take specified action" to meet the notification requirements. 49 U.S.C. § 30118(b), (e). The Safety Act provides for hearings upon a motion of the Secretary or any interested person at which "[a]ny interested person may make written and oral presentations of information, views, and arguments on whether the manufacturer has reasonably met the notification requirements." 49 U.S.C. § 30118(e). Any interested person can also file a petition with the Secretary of Transportation requesting the Secretary to begin a proceeding to decide whether to issue an order requiring a manufacturer to give notice under § 30118. *See* 49 U.S.C. § 30162(a). Furthermore, the Attorney General is authorized to bring a civil action to enforce the Safety Act and the notification obligations. *See* 49 U.S.C. §§ 30121(b), 30163. A person found in violation of § 30118's notification requirement in this civil action is liable to the United States Government for a civil penalty of not more than $1000 for each violation and not more than $800,000 for a related series of violations. *See* 49 U.S.C. §§ 30121(a), (b), 30165(a).[17] Lastly, the Safety Act does not make violation of the notification requirements criminal.[18] In light of this extensive administrative scheme, we think it clear that Congress did not intend to equate a violation of the Safety Act's notification requirements in and of itself with the felony of mail or wire fraud. Moreover, given the limits on the civil penalties, the absence of a private right of action, and the option of private parties to petition for administrative action, it

_____

defendants.

[17]In addition, 49 C.F.R. § 578.6(a) provides for a $1100 limit for each violation and a $925,000 limit for a series of related violations. Although these limits are in apparent contravention of the statutory limits of $1000 for each violation and $800,000 for a series of related violations found in 49 U.S.C. § 30165, we need not decide which controls here. In any event, these limits to recovery would be circumvented if a private party could sue to enforce the Safety Act's notification requirements directly or via a state or federal RICO statute.

[18]In fact, an amendment that would have added criminal penalties for knowingly and willfully violating safety standards promulgated under the Safety Act was considered and rejected by the Senate because, among other reasons, the Senate was "not dealing with mobsters and gangsters.... What we are trying to do is sensibly and realistically to promote safety for the benefit of the public. We are not trying to pass a law that will be punitive. We are not reaching down to eliminate gangsterism by this bill. We are trying to promote safety." 112 Cong. Rec. 14249 (1966) (statement of Sen. Pastore); *see* 112 Cong. Rec. 14247-52.

is also clear that Congress did not intend for a violation of the Safety Act's notification requirements to be the basis for a private civil RICO action, which would permit unlimited, treble damages.

The foregoing discussion also makes it clear that the Safety Act confers no private cause of action to enforce its notification requirements.[19] The question of whether a private cause of action is conferred is essentially one of interpreting Congressional intent. *See California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981) ("Cases subsequent to *Cort* have explained that the ultimate issue is whether Congress intended to create a private cause of action."); *Till v. Unifirst Federal Savings & Loan Ass'n,* 653 F.2d 152, 157 (5th Cir. Unit A Aug.1981). The inquiry is guided by the *Cort* four-prong test.[20] Examination of the Safety Act in light of both the second and third prongs of this test unequivocally indicates that Congress did not intend to create a private cause of action here. With respect to the second prong, nothing in the language of the Safety Act or its legislative history supports an inference that Congress intended to create a private cause of action for a violation of the notification requirements. To the contrary the extensive array of administrative remedies, including participation there by "interested parties,"and the

_____

[19]Plaintiffs do not argue that the Safety Act creates a private right of action. Instead, they argue that they brought suit under the private right of action provided by the Georgia civil RICO statute and that the Safety Act's lack of a private right of action does not preclude them from proceeding under this state law theory. In *Lowe v. General Motors Corp.,* 624 F.2d 1373 (5th Cir.1980), this Court explained that a state negligence case in which a violation of the Safety Act was used as evidence of the defendant's negligence is not the same as an action to enforce the act's notification requirements. In other words, "[t]he mere fact that the law which evidences negligence is Federal while the negligence action itself is brought under State common law does not mean that the state law claim metamorphoses into a private right of action under Federal regulatory law." *Id.* at 1379. Thus, the Plaintiffs are correct that the lack of a private right of action under the Safety Act does not preclude them acting under a state law cause of action. However, the lack of a private right of action for a violation of the Safety Act's notification requirements is strong evidence that a violation of these requirements does not constitute the predicate act of mail or wire fraud. As explained above, the Plaintiffs' cause of action under the Georgia civil RICO statute fails because Plaintiffs cannot show a violation of the federal mail or wire fraud statutes, not because they could not proceed under a private right of action provided by the Safety Act.

[20]In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26, (1975), the Supreme Court set forth the following four guidelines:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088 (internal quotations and citations omitted).

specific provision authorizing the Attorney General to bring a civil enforcement action create a strong inference that Congress did not intend to create a private right of action. Likewise the express provision of a private cause of action for a distributor or dealer to enforce the obligations of a manufacturer or distributor related to safety defects or safety standard violations found in a vehicle *prior* to its sale to a consumer, as provided by 49 U.S.C. § 30116,[21] is strong evidence that Congress knew how to create a private cause of action to enforce the notification requirements and would have done so expressly if it had intended to create such a private cause of action. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 571, 99 S.Ct. 2479, 2488, 61 L.Ed.2d 82 (1979); *Till,* 653 F.2d at 160. The Plaintiffs also fail the third prong because implying a private cause of action would be inconsistent with the legislative scheme of the Safety Act. Implying such a private cause of action to enforce the notification requirements would undermine the administrative remedies.[22] *See District Lodge No. 166 v. TWA Services, Inc.,* 731 F.2d 711, 715-16 (11th Cir.1984) (finding

---

[21]Section 30116 does not involve the notification duties. It provides in pertinent part:

> (a) If, after a manufacturer or distributor sells a motor vehicle or motor vehicle equipment to a distributor or dealer and before the distributor or dealer sells the vehicle or equipment, it is decided that the vehicle or equipment contains a defect related to motor vehicle safety or does not comply with applicable motor vehicle safety standards prescribed under this chapter—

>> (1) the manufacturer or distributor immediately shall repurchase the vehicle or equipment at the price paid by the distributor or dealer, plus transportation charges and reasonable reimbursement of at least one percent a month of the price paid prorated from the date of notice of noncompliance or defect to the date of repurchase;  or

>> (2) if a vehicle, the manufacturer or distributor immediately shall give to the distributor or dealer at the manufacturer's or distributor's own expense, the part or equipment needed to make the vehicle comply with the standard or correct the defect.

> . . . .

> (c) The parties shall establish the value of the installation and the amount of reimbursement under this section. If the parties do not agree, or if a manufacturer or distributor refuses to comply with subsection (a) or (b) of this section, the distributor or dealer purchasing the motor vehicle or motor vehicle equipment may bring a civil action. The action may be brought in a United States district court for the judicial district in which the manufacturer or distributor resides, is found, or has an agent, to recover damages, court costs, and a reasonable attorney's fee. An action under this section must be brought not later than 3 years after the claim accrues.

49 U.S.C. § 30116.

[22]For example, a private cause of action could result in damages far in excess of the civil penalties contemplated by the Safety Act thus undermining the civil penalty limits. *See* 49 U.S.C. § 30165(a) (limiting the civil penalty for violations of § 30118, which creates the notification duty, to $1000 for each

no private right of action in the Service Contract Act because in part " 'it would be flatly inconsistent with the express provision of a limited governmental cause of action to imply a wide-ranging private right of action as an alternative to a governmental suit' ") (quoting *Miscellaneous Service Workers, Local 427 v. Philco-Ford Corp.,* 661 F.2d 776, 780 (9th Cir.1981)). "[W]hen an examination of one or more of the *Cort* factors 'unequivocally reveals congressional intent, there is no need for us to trudge through all four of the factors.' " *Florida v. Seminole Tribe of Florida,* 181 F.3d 1237, 1247 (11th Cir.1999) (quoting *Liberty Nat'l Ins. Holding Co. v. Charter Co.,* 734 F.2d 545, 558 (11th Cir.1984) (internal quotation marks omitted) (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 388, 102 S.Ct. 1825, 1844, 72 L.Ed.2d 182 (1982))). Thus, we readily conclude that Congress did not intend to create a private cause of action to enforce the notification requirements found in the Safety Act. *Cf. Seminole Tribe,* 181 F.3d at 1247-50 (finding no implied private cause of action in the Indian Gaming Regulatory Act based on the second and third prongs of the *Cort* test). The only other circuit court to address this issue has concluded that there is no private cause of action under the Safety Act. *See Handy v. General Motors Corp.,* 518 F.2d 786, 788 (9th Cir.1975) (*per curiam*) ("The district court correctly ruled that Congress did not intend to create private rights of action [under the Safety Act] in favor of individual purchasers of motor vehicles when it adopted the comprehensive system of regulation to be administered by the NHTSA.").

Given the extensive array of administrative remedies for violation of the Safety Act, including specific provisions for participation by "any interested person," and given the specific provision for the civil enforcement action by the Attorney General with no mention of a corresponding private cause of action, and given the limits on the civil penalties and lack of criminal penalties, and finally given the absence of a private cause of action, we conclude that Congress did not intend for a violation of the Safety Act's notification requirement to constitute the crime of mail or wire fraud. It follows that Congress did not intend for a violation of the Safety Act to be the basis for a private civil RICO action, which would permit unlimited, trebled damages. Reaching the same conclusion in an analogous context, the D.C. Circuit in *Danielsen v. Burnside-Ott Aviation Training Center,* 941 F.2d 1220, 1229 (D.C.Cir.1991), affirmed the dismissal of a federal RICO claim based on violations of the Service Contract Act ("SCA"). In *Danielsen,* the plaintiffs argued that the defendants' non-compliance with the contract requirements of the SCA amounted to mail fraud and that this mail fraud was the racketeering activity supporting their RICO claim. The court rejected this

violation and to $800,000 for a related series of violations).

argument reasoning that:

> The very fact that Congress enacted the SCA with its complex framework for administrative recovery suggests that Congress did not contemplate that violation of SCA constituted the criminal felony of mail fraud.... [I]t would seem likely that either the statute or at least the legislative history would have indicated as much.

*Id.* at 1229. Likewise, in *Norman v. Niagara Mohawk Power Corp.,* 873 F.2d 634 (2d Cir.1989), the Second Circuit rejected the plaintiffs' attempt to circumvent the extensive administrative scheme established by the Energy Reorganization Act of 1974, by pleading their claim in RICO terms. In the court's words, "[a]rtful invocation of controversial civil RICO, particularly when inadequately pleaded, cannot conceal the reality that the gravamen of the complaint herein is section 210 harassment." *Id.* at 637. Thus, the plaintiffs were limited to the administrative remedies created by the relevant federal act and could not use RICO to get treble damages and its other attendant benefits. *See id.* at 636-37. We agree with the reasoning of these courts. To permit plaintiffs to convert non-compliance with the notification requirement found in the Safety Act, a regulatory statute with its own administrative remedies, into mail and wire fraud and thereby to maintain a civil RICO action would upset the purposes and contradict the intent of the statute.[23]

Apparently foreseeing our holding that the Plaintiffs have established no duty to disclose which might constitute mail or wire fraud, the Plaintiffs assert in their brief on appeal that the absence of such a duty is not dispositive. They cite language in a number of cases to the effect that nondisclosure of material facts intending to create a false and fraudulent representation might constitute mail fraud. *See United States v. O'Malley,* 707 F.2d 1240, 1247 (11th Cir.1983) ("Fraud, for purposes of a mail fraud conviction, may be proved through the defendant's non-action or non-disclosure of material facts intended to create a false and fraudulent representation."); *Pelletier v. Zweifel,* 921 F.2d 1465, 1509 (11th Cir.1991) (citing *O'Malley* for the proposition that "nondisclosure of material fact with intent to create a false or fraudulent representation can constitute scheme to defraud under mail fraud statutes"). However, the Plaintiffs' brief on appeal is extremely vague with respect to the application of such a theory to the facts of the instant case. They point merely to the facts that the Defendants never notified the Plaintiffs or other similar owners and that such a notification would have been costly. We cannot conclude that Plaintiffs have created a genuine issue of fact

---

[23] On appeal, Plaintiffs have pointed only to the Safety Act as a source of any duty to disclose on the part of the Defendants; they articulate no other duty to disclose. Indeed, the district court expressly rejected Plaintiffs' argument below that such a duty existed under Georgia law because of "confidential relations" or "special circumstances."

that Defendants failed to disclose material facts intending to create a false or fraudulent representation.[24]

In sum, the district court erred in concluding that the duty to notify found in the Safety Act was such that its breach constituted mail and wire fraud, and the Plaintiffs have not otherwise established that Defendants violated the mail or wire fraud statutes. Thus, the Plaintiffs have failed to establish that the Defendants committed the racketeering activity of mail and/or wire fraud and therefore they cannot succeed on their Georgia civil RICO claim. The Defendants are entitled to summary judgment on this claim. Accordingly, we reverse the district court's denial of the Defendants' motion for summary judgment with respect to the RICO claim and remand for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.[25]

---

[24]Thus, we need not explore whether or under what other circumstances mail and wire fraud might be proved by nondisclosure of material facts intended to create a false and fraudulent representation.

[25]Plaintiffs' Motion for Stay of Consideration of Appeal is denied.