[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11491

Non-Argument Calendar

_____

BLACK STONE AUTO EXPORT, INC.,

Plaintiff-Appellant,

*versus*

HYUNDAI MOTOR AMERICA (INC),

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-02458-CC

_____

Before BRANCH, LUCK, and EDMONDSON, Circuit Judges.

PER CURIAM:

Black Stone Auto Export, Inc. ("Plaintiff") appeals the district court's dismissal -- pursuant to Fed. R. Civ. P. 12(b)(6) -- of Plaintiff's amended complaint against Hyundai Motor America, Inc. ("Hyundai"). No reversible error has been shown; we affirm.

In September 2015, Hyundai issued a safety recall on certain 2011 and 2012 Hyundai Sonatas due to a manufacturing defect in the engines ("Engine Recall"). Hyundai's recall notice -- sent pursuant to the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30100 *et seq.* ("Safety Act") -- stated that Hyundai would inspect and repair the recalled Sonatas.

Following the Engine Recall, Plaintiff (a used-car dealer) began purchasing Hyundai Sonatas covered by the recall. Plaintiff would transport the recalled Sonatas to Hyundai for repair at Hyundai's expense. After Hyundai returned the repaired Sonatas to Plaintiff, Plaintiff would sell the repaired cars to its customers.

In September 2018, Hyundai notified Plaintiff about a change in its method of remedying the Engine Recall. Instead of repairing the recalled Sonatas, Hyundai planned to provide compensation for each recalled Sonata in an amount equal to the Kelley Blue Book value of an equivalent vehicle in good condition.

Between September 2018 and April 2019, Hyundai compensated Plaintiff for 37 recalled Sonatas at a price based on this Kelley Blue Book value.

On 10 April 2019, Hyundai notified Plaintiff about another modification to its compensation procedure.  Under the revised procedure, Plaintiff was required to provide a vehicle registration and Vehicle Identification Number for each Sonata Plaintiff submitted for compensation.  Hyundai later refused to compensate Plaintiff for seven recalled Sonatas due to Plaintiff's failure to provide the newly-required documentation.

In February 2020, Plaintiff filed this civil action in state court. Hyundai removed the case to federal district court based on diversity jurisdiction.

In its amended complaint, Plaintiff asserted against Hyundai claims for breach of contract and for promissory estoppel.  According to Plaintiff, Hyundai's September 2018 announcement that Hyundai planned to provide compensation (instead of repair) for the recalled Sonatas constituted a "legal offer" to form a contract "independent of and outside the framework of the . . . Safety Act." Plaintiff says it accepted Hyundai's purported offer through conduct -- by submitting 37 recalled Sonatas to Hyundai for compensation in the amount equal to the Kelley Blue Book value of an equivalent car in good condition.  Plaintiff says Hyundai's later refusal to compensate Plaintiff for seven additional Sonatas under these same terms constituted a breach of contract.  About its claim for promissory estoppel, Plaintiff says it relied reasonably -- and to

4                    Opinion of the Court                    21-11491

its detriment -- on Hyundai's purported promise to compensate Plaintiff for the recalled Sonatas at the Kelley Blue Book price.

Hyundai moved -- pursuant to Fed. R. Civ. P. 12(b)(6) -- to dismiss Plaintiff's amended complaint for failure to state a claim. The district court granted Hyundai's motion.  The district court determined that Hyundai's compensation procedure was a remedy that fell within the scope of the recall remedies set forth by the Safety Act.  The district court concluded -- based on our decision in *Ayres v. GMC*, 234 F.3d 514 (11th Cir. 2000) -- that Plaintiff could not use private litigation to enforce or to compel a recall remedy under the Safety Act.  The district court thus determined that Plaintiff's claims for breach of contract and for promissory estoppel were both subject to dismissal.[1]

We review *de novo* a district court's dismissal for failure to state a claim, accepting all properly alleged facts as true and construing them in the light most favorable to the plaintiff. *See Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). We do not accept as true legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[W]hether a statute creates by implication a private right of action is a question of statutory construction which we review *de novo*." *Love v. Delta*

---

[1] The district court also determined that Plaintiff's breach-of-contract claim failed because the purported contract lacked consideration.  Because we affirm the district court's dismissal on grounds that Plaintiff has no private cause of action to pursue its claims, we pass over the district court's alternative independent ground for dismissal.

*Air Lines*, 310 F.3d 1347, 1351 (11th Cir. 2002) (quotation and citation omitted).

Under the Safety Act, a vehicle manufacturer must remedy a manufacturing defect in one of these three ways:

(i)    by repairing the vehicle;

(ii)   by replacing the vehicle with an identical or reasonably equivalent vehicle; or

(iii)  by refunding the purchase price, less a reasonable allowance for depreciation.

49 U.S.C. § 30120(a)(1)(A). The vehicle manufacturer is free to choose among these three remedies. *See id.*

In *Ayres*, we addressed whether the Safety Act conferred a private cause of action to enforce the Safety Act's notification requirements. Guided by the factors set forth in the Supreme Court's decision in *Cort v. Ash*, 422 U.S. 66 (1975), we concluded that the answer was "no." 234 F.3d at 523-24. In making that determination, we identified these circumstances as creating a "strong inference" that Congress had no intent to create a private cause of action under the Safety Act: (1) the absence of statutory language or legislative history supporting an inference of Congressional intent; (2) the "extensive array of administrative remedies" available under the statute, including participation by "interested parties"; (3) a specific statutory provision authorizing the Attorney General to bring a civil action to enforce provisions of the Safety Act; and (4) the express provision of a private cause of action for a vehicle

distributor or dealer to enforce remedies under certain circumstances. *See id.* at 522-23. We also determined that "implying a private cause of action would be inconsistent with the legislative scheme of the Safety Act" and "would undermine the administrative remedies" authorized by the statute. *Id.* at 524.

Here, Hyundai's decision to provide compensation for the recalled Sonatas is a recall remedy that falls clearly within the scope of the Safety Act. The Engine Recall notice said expressly that it was being issued pursuant to the Safety Act. Hyundai owed a statutory obligation under the Safety Act either to repair, to replace, or to refund the price of these recalled vehicles. *See* 49 U.S.C. § 30120(a)(1)(A).

Hyundai choose initially to satisfy its recall obligations by repairing the affected Sonatas. That Hyundai later elected to provide compensation for the recalled Sonatas in lieu of repair is no evidence that Hyundai sought to form an agreement "independent of and outside of" its statutory obligations under the Safety Act. Hyundai was free to choose among the three remedies set forth in the Safety Act. *See id.* We need not accept as true Plaintiff's legal conclusion that Hyundai's September 2018 announcement about the compensation procedure constituted a "legal offer." *See Iqbal,* 556 U.S. at 678. Nor do we accept as true Plaintiff's unsupported conclusory allegation that Hyundai provided compensation for the recalled Sonatas "instead of . . . otherwise proceeding under the remedies set forth in the Federal Safety Act." *See id.*

On appeal, Plaintiff contends that Hyundai's compensation policy fell outside the recall remedies provided by the Safety Act because the purchase price set by Hyundai (a price based on the Kelley Blue Book value of an equivalent vehicle) did not conform to the refund remedy authorized by the Safety Act (the actual purchase price minus depreciation). We are unpersuaded.

Hyundai's compensation policy provided fair-market-value money damages for the recalled Sonatas: a remedy consistent with the recall remedy in section 30120(a)(1)(A)(iii), which provides for a refund of "the purchase price, less a reasonable allowance for depreciation." To the extent Hyundai's compensation amount differed from the refund amount authorized by the Safety Act, that issue presents a question of Hyundai's *compliance* with the Safety Act -- not a question about whether Hyundai provided compensation *pursuant to* the Safety Act. Given the factual allegations in Plaintiff's complaint and the pertinent statutory language, we cannot conclude that the purported price discrepancy takes Hyundai's compensation procedure outside the scope of the Safety Act or otherwise evidences an intent by Hyundai to offer a recall remedy "above and beyond" Hyundai's statutory obligations.

The district court concluded correctly that Plaintiff's attempt to recover damages caused by Hyundai's refusal to compensate Plaintiff for seven of the recalled Sonatas constituted an attempt to enforce a recall remedy under the Safety Act. The district court also concluded correctly that -- because Plaintiff has no private right of action to enforce the recall provisions of the Safety Act

-- Plaintiff's claims for breach of contract and for promissory estoppel were each subject to dismissal for failure to state a claim upon which relief could be granted.[2]

On appeal, Plaintiff contends that *Ayres* is too different from this case because *Ayres* addressed only whether a private cause of action existed to enforce the Safety Act's notification requirements -- not the Safety Act's recall remedies. We disagree. Although *Ayres* involved a different provision of the Safety Act, the statutory analysis in *Ayres* guides us on the recall-remedy provision at issue in this appeal. The same factors identified in *Ayres* -- including the availability of an "extensive array of administrative remedies," a provision authorizing the Attorney General to pursue civil enforcement actions, and an express provision of a private cause of action for distributors and dealers -- are also present in this case. *See* 49 U.S.C. § 30120(e) (providing an administrative remedy for complaints --including by "[a]ny interested person" -- about a manufacturer's non-compliance with the Safety Act's recall remedies); *id.* § 30163 (addressing the Attorney General's authority to bring a civil action based on violations of the Safety Act); *id.* § 30116 (providing a cause of action to vehicle distributors and dealers under certain circumstances). As in *Ayres*, these circumstances support a "strong

---

[2] We reject Plaintiff's argument on appeal that the district court failed to address adequately Plaintiff's claim for promissory estoppel. The district court determined that Plaintiff's claims for breach of contract and for promissory estoppel each failed for the same reason: the lack of a private right of action to enforce the terms of the Safety Act.

inference" that Congress had no intention of creating a private cause of action to enforce the Safety Act's recall remedies.

Given our consideration of *Ayres*, we accept that the Safety Act confers no private cause of action to enforce the Safety Act's recall remedies. Plaintiff's complaint was thus subject to dismissal for failure to state a claim.

AFFIRMED.