Beatrice COKER and Jimmy L. Colbert, individually and on behalf of all others similarly situated, Plaintiffs,

v.

DAIMLERCHRYSLER CORPORATION and Chrysler Corporation, Defendants.

No. Civ.A. 102CV903–RWS.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 5, 2002.

**1368**

Lance Alan Cooper, Scott B. Cooper, Andrew W. Jones, Cooper & Jones, Marietta, GA, for Plaintiffs.

Charles A. Newman, John W. Rogers, Kathy Wisniewski, Bryan Cave, St. Louis, MO, Mary Diane Owens, Anandhi S. Rajan, Swift, Currie, McGhee & Hiers, Atlanta, GA, for Defendants.

### *ORDER*

STORY, District Judge.

This case is before the Court on Plaintiffs' Motion to Remand [7–1], Plaintiffs' Motion for Rule 11 Sanctions [12–1], and Defendant's Motion to File a Supplemental Memorandum of Law in Support of Opposition to Plaintiff's Motion to Remand [24–1]. Also pending are Defendant's Motion to Dismiss [2–1] and Defendant's Motion to File Memorandum of Law in Excess of 25 Pages [3–1], further action on which has been postponed by Consent Order [6–1] until the Court's Order on Plaintiffs' Motion to Remand. As a preliminary matter, Defendant's Motion to File a Supplemental Memorandum [24–1] is **GRANTED.** After reviewing all of the record and the arguments of the parties, the Court enters the following ORDER.

### Factual Background

Plaintiffs Beatrice Coker and Jimmy L. Colbert originally brought this action in the Superior Court of Fulton County, Georgia, against Defendant DaimlerChrysler Corporation. In their Complaint, Plaintiffs bring claims individually and on behalf of a putative class, defined as follows:

> All residents of Georgia who own or lease model year 1993–2002 vehicles manufactured and/or sold by Chrysler equipped with Gen–3 seat belt buckles; and all non-residents of Georgia who own or lease model year 1993–2002 Chrysler vehicles equipped with Gen–3 seat belt buckles, which were purchased or leased in Georgia by such non-residents.

(Pl.Compl.¶ 25.) According to Plaintiffs, the Gen–3 seat belt buckles are defective because they are subject to accidental release, especially in the event of a collision. Plaintiffs allege that the buckles fail to comply with applicable safety standards, including those set forth by the National Highway Transportation Safety Administration ("NHTSA"). All of Plaintiffs' counts, which include breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, and negligent misrepresentation, are made pursuant to state law. Plaintiffs seek damages associated with replacing the Gen–3 Buckles.

On April 8, 2002, Defendant removed this case to federal court, asserting federal question jurisdiction pursuant to 28 U.S.C. § 1441. Thereafter, Plaintiffs moved to remand this case and requested attorney's fees pursuant to 28 U.S.C. § 1447(c). Additionally, Plaintiffs moved for sanctions pursuant to Fed.R.Civ.P. 11.

This case is one of several that have been filed against Defendant in state

courts alleging defective seat belts. *See Sylvester v. DaimlerChrysler Corp.*, No. 1:02CV0567 (N.D.Ohio May 30, 2002) (remanding similar case); *Inman v. Daimler-Chrysler Corp.*, No. C–00–340 (S.D.Tex. Dec. 7, 2000) (same); *Hiller v. Daimler-Chrysler Corp.*, No. 1:02–10533 (D.Mass. filed Feb. 15, 2002) (similar case). After removing *Hiller*, *Sylvester*, and this case to federal district courts, Defendant moved to transfer the cases for consolidated proceedings before the Judicial Panel on Multidistrict Litigation. The Judicial Panel entered an order denying transfer on August 12, 2002. *In re DaimlerChrysler Corp. Seat Belt Buckle Prod. Liab. Litig.*, 217 F.Supp.2d 1376 (Jud.Pan. Mult.Lit.2002).

## Discussion

### I. Federal Jurisdiction

Unless Congress explicitly provides otherwise, a defendant may remove to federal court a civil action brought in state court, provided that the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a)–(b). Original jurisdiction may be based on a federal question or on diversity of citizenship. *Id.* §§ 1331–1332. Here, diversity jurisdiction is lacking; thus, removal jurisdiction must be based on the presence of a federal question.[1]

Defendant relies for removal on 28 U.S.C. § 1331, which establishes "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Removal jurisdiction is

governed by the well-pleaded complaint rule, which "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Moreover, removal jurisdiction is construed narrowly, and any doubts about jurisdiction are resolved in favor of the non-removing party. *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir.1996).

Generally, "a case arises under federal law only if it is federal law that creates the cause of action." *Id.*; *see Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 8–10, 103 S.Ct. 2841, 2845–47, 77 L.Ed.2d 420 (1983) (setting forth principles). Indeed, in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, the Supreme Court held that where Congress had determined that there should be no private federal cause of action under a federal statute, a complaint alleging violation of that statute as an element of a state cause of action failed to create federal question jurisdiction. 478 U.S. 804, 819, 106 S.Ct. 3229, 3237, 92 L.Ed.2d 650 (1986). Even though *Merrell Dow* recognized that there may be an exceptional case in which federal question jurisdiction is available, 478 U.S. at 808–09, 106 S.Ct. 3229, this principle does not disturb "the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 813, 106 S.Ct. 3229.

---

1. Defendant does not argue that there may be diversity jurisdiction in this case. *See* 28 U.S.C. § 1332. Further, it appears that the amount in controversy requirement is not met, as Plaintiffs' complaint expressly requests damages not to exceed $74,500 for each plaintiff. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n. 6 (11th Cir.2001) (damages sought by plaintiffs for individual claims may generally not be aggregated to satisfy amount in controversy); *Sylvester v. Daimler-Chrysler Corp.*, No. 1:02CV0567 (N.D.Ohio May 30, 2002) (finding no diversity jurisdiction in nearly identical case); *Inman v. Daimler-Chrysler Corp.*, No. C–00–340 (S.D.Tex. Dec. 7, 2000) (same).

The Eleventh Circuit has followed these standards, noting that in narrow circumstances "jurisdiction may be available if a substantial, disputed question of federal law is a necessary element of a state cause of action." *Jairath v. Dyer,* 154 F.3d 1280, 1282 (11th Cir.1998). However, "it will be only the exceptional federal statute that does not provide for a private remedy but still raises a federal question substantial enough to confer federal question jurisdiction when it is an element of a state cause of action." *Bellsouth Telecomm. v. MCImetro Access Transmission,* 278 F.3d 1223 (11th Cir.2002) (quoting *City of Huntsville v. City of Madison,* 24 F.3d 169, 174 (11th Cir.1994)) (internal quotations omitted).[2]

In *Jairath v. Dyer,* for example, a plaintiff brought suit pursuant to state law for damages based on breach of a duty created by the Americans with Disabilities Act ("ADA"). 154 F.3d at 1280. The defendant removed the case to federal court, but the Eleventh Circuit held that the district court lacked subject matter jurisdiction. *Id.* at 1280–81. The court reasoned that the plaintiff's claims did not arise under federal law because there was no private cause of action for a damages remedy under the ADA. *Id.* at 1283. Absent special circumstances, therefore, a state law cause of action that simply incorporates the violation of a federal duty as an element does not make that element so "necessary" as to confer federal jurisdiction. *See id.* at 1282–83 (discussing principles).

In determining whether a particular case falls within the "necessary element" exception, it is useful to evaluate the nature of the federal interest at stake. *Merrell Dow,* 478 U.S. at 814 n. 12, 106 S.Ct. 3229. For example, federal jurisdiction may be proper where the validity of a federal statute is challenged; in contrast, where violation of a federal statute merely supports an element of a state claim, federal jurisdiction is generally lacking. *Id.Compare In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.,* 216 F.Supp.2d 474, 488–89 (D.Md.2002) (federal jurisdiction proper where plaintiffs' claims would essentially invalidate federal law), *with Diaz v. Sheppard,* 85 F.3d 1502 (11th Cir.1996) (remand required where prisoner made state-law claim for legal malpractice, even though attorney's understanding of Eighth Amendment would be at issue in determining malpractice), *and Hill v. Marston,* 13 F.3d 1548 (11th Cir. 1994) (remand required where complaint alleged violations of state securities statutes, even though elements of state law claim included knowledge of and failure to comply with federal securities regulations).

Similarly, where resolution of a federal issue would determine the outcome of a case, federal jurisdiction may be appropriate; in contrast, where state-law claims do not depend for their success on favorable resolution of the federal issues, they often do not meet the requirements for federal jurisdiction. *Compare Ayres v. General*

---

2. Here, the parties do not dispute that there is no federal private cause of action available for addressing violations of the regulations cited by Plaintiffs; thus, the Court must determine whether this case is of the exceptional variety for which federal jurisdiction is available. *See Handy v. General Motors Corp.,* 518 F.2d 786, 788 (9th Cir.1975) ("Congress did not intend to create private rights of action in favor of individual purchasers of motor vehi-

cles when it adopted the comprehensive system of regulation to be administered by the NHTSA."). *See also Ayres v. General Motors Corp.,* 234 F.3d 514, 524 (11th Cir.2000) (citing *Handy* ); *In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.,* 1993 WL 204116, at *2 (E.D.Pa.1993) (acknowledging no private cause of action for violation of NHTSA regulations).

*Motors Corp.*, 234 F.3d 514 (11th Cir.2000) (jurisdiction appropriate where resolution of case depended "entirely on interpretation of the federal mail and wire fraud statutes and their interaction with the [Vehicle] Safety Act"), *with Sylvester v. DaimlerChrysler Corp.*, No. 1:02CV0567 (N.D.Ohio May 30, 2002) (remand required where plaintiffs' success did not depend on finding that defendants violated federal regulations).

The above distinctions provide guidance in evaluating the parties' arguments here. Plaintiffs' complaint alleges in part that the Gen–3 Buckle does not comply with NHTSA standards. (Pl.Compl.¶ 8.) In particular, Plaintiffs state that the buckle does not conform to a provision requiring that a "[b]uckle release mechanism shall be designed to minimize the possibility of accidental release." 49 C.F.R. § 571.209 S4.1(e). Defendant argues that Count I of the complaint necessarily requires determination of federal issues because it states that Defendant breached its express warranty that its vehicles "meet all applicable safety standards." (*See* Pl.Compl. ¶ 30.) Because Plaintiffs expressly mention the NHTSA standards, Defendant reasons that Plaintiffs must prove violation of the federal regulations as an essential element of their state law claims. Defendant makes a similar argument with respect to Plaintiffs' Count II, wherein Plaintiffs allege breach of implied warranty of merchantability because the vehicles did not conform to affirmations of fact that the vehicles met all safety standards. (*See* Pl.Compl. ¶ 38).

■ Evaluating Plaintiffs' complaint against the principles set forth above, the Court determines that it does not have federal-question jurisdiction over this case. First, Plaintiffs do not challenge the validi-

ty of the Safety Regulations; indeed, by basing their claims in part on the violation of regulations, Plaintiffs implicitly acknowledge their validity. *Cf. In re Wireless*, 216 F.Supp.2d 474, 486 ("These allegations put the validity of the federal [Communications Commission] regulations . . . directly in dispute.").

Nor do Plaintiffs' claims necessarily depend on a finding that Defendant violated federal regulations. Defendant relies heavily on *Ayres v. General Motors Corp.* in arguing that this is the type of special case giving rise to federal question jurisdiction. In *Ayres*, the Eleventh Circuit held that there was a sound basis for removal jurisdiction where the plaintiffs brought claims against General Motors for violations of Georgia's RICO statute. 234 F.3d 514, 516–17. The plaintiffs' theory of their case was that in violating the federal Vehicle Safety Act, the defendants committed federal mail and wire fraud, actions that provided the basis of the Georgia RICO claims. *Id.* at 516–17. The court reasoned that violation of the federal mail and wire fraud statutes would be an essential element of the plaintiffs' cause of action. *Id.* at 518. In fact, the plaintiffs' case depended "entirely" on whether violating the Vehicle Safety Act constituted federal mail and wire fraud. *Id.* In holding removal jurisdiction proper, the court emphasized that "plaintiff's cause of action has as an essential element the existence of a right under federal law which will be supported by a construction of the federal law concluding that the federal crime is established, but defeated by another construction concluding the opposite." *Id.* at 519.

In contrast here, Defendant allegedly breached warranties that its vehicles complied with "all" applicable safety stan-

dards, of which federal regulations are only one. *See Wynn ex rel. Alabama v. Philip Morris, Inc.,* 51 F.Supp.2d 1232, 1244 (N.D.Ala.1999) (plaintiff can make out claim without showing violation of federal statute). Unlike *Ayres,* whether the Defendants violated federal regulations is not so essential to Plaintiffs' cause of action that Plaintiffs cannot prevail without such a showing. As Plaintiffs argue, "safety standards" is a broad category, that may include industry and consumer standards as well as federal regulations.[3] Plaintiffs' case does not depend "entirely" on Defendant's alleged violations of federal regulations, and so the circumstances of *Ayres* are not present here. This case thus does not present the exceptional circumstances giving rise to federal jurisdiction.

## II. Attorney's Fees and Costs

Plaintiffs request that this Court impose costs and fees upon Defendant pursuant to 28 U.S.C. § 1447(c). That section provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." *Id.* Because § 1447(c) expressly provides for the award of attorney's fees as well as costs, attorney's fees may be awarded absent a showing of bad faith., *Publix Supermarkets, Inc. v. United Food & Commercial Workers Int'l Union AFL—CIO & CLC,* 900 F.Supp. 419, 421 (M.D.Fla. 1995); *see Graham Commercial Realty, Inc. v. Shamsi,* 75 F.Supp.2d 1371, 1373 (N.D.Ga.1998) ("A finding of bad faith or improper purpose by the removing party is

not necessary."). Indeed, the purpose of § 1447(c) is not to punish defendants for improper removal, but to compensate plaintiffs for expenses associated with obtaining a remand order. *Publix,* 900 F.Supp. at 422. Further, "[a]n award of attorneys' fees is solely in the discretion of the court." *Graham,* 75 F.Supp.2d at 1373; *Gray v. N.Y. Life Ins. Co.,* 906 F.Supp. 628, 631 (N.D.Ala.1995); *see also Hobbs v. Blue Cross Blue Shield of Ala.,* 276 F.3d 1236, 1243 (11th Cir.2001) (reviewing denial of costs and fees for abuse of discretion).

The Court is mindful of Plaintiffs' argument that Defendant has improperly removed several cases involving products liability claims In *Inman v. Daimlerchrysler Corp.,* No. C–00–340 (S.D.Tex. Dec. 8, 2000), the Southern District of Texas rejected Defendant's arguments that it had diversity jurisdiction or federal-question jurisdiction arising from preemption over seat-belt-related claims. In *Garbie v. DaimlerChrysler Corp.,* 211 F.3d 407 (7th Cir.2000), the Seventh Circuit Court of Appeals rejected Defendant's argument that it had diversity jurisdiction over vehicle-paint claims. In *Gibson v. Chrysler Corp.,* 261 F.3d 927 (9th Cir.2001), the Ninth Circuit Court of Appeals also rejected Defendant's argument that it had diversity jurisdiction over vehicle-paint claims. Just recently, the Northern District of Ohio rejected Defendant's argument that it had diversity jurisdiction or federal-question jurisdiction in a nearly identical case. *Sylvester v. DaimlerChrysler,* No. 1:02CV01567 (N.D.Ohio May 30, 2002).

---

**3.** Defendant points out that *Ayres* involved the Motor Vehicle Safety Act, *see* 49 U.S.C. § 30101 *et seq.,* the statute pursuant to which the NHTSA seat belt standards (at issue here) were promulgated. (Def.'s Opposition to Pl.'s Mot. to Remand at 11–12.) However, the

above analysis illustrates that this similarity is not dispositive; the more important inquiry evaluates the nature of the federal interests at stake in the context of each particular case. *See Merrell Dow,* 478 U.S. at 814 n. 12, 106 S.Ct. 3229 (discussing this approach).

However, only in *Sylvester* did Defendant rely on the same arguments in favor of federal-question jurisdiction that it presents to this Court; all of the other cases cited evaluated different bases for federal jurisdiction. Further, *Sylvester* was decided after Defendant moved to remove this case, and so its holding could not have been known to Defendant at the time of this case's removal.

■ It appears that Defendant may now have exhausted its possible arguments for federal jurisdiction. The parties have devoted most of their briefing on the § 1447(c) issue to the relevance of Defendant's removal history. However, even if this pattern of removals justified a finding of improper purpose, such finding is not a prerequisite to awarding § 1447(c) costs and fees. *Graham,* 75 F.Supp.2d at 1373. Instead, improper removal itself may, in the court's discretion, justify compensation of the nonremoving party. Here, this case was improperly removed by Defendant, and this Court determines that Plaintiffs should be compensated for their expenses in obtaining this remand. *See id.* at 1374 (discussing improper removal and awarding § 1447(c) costs and fees).

### III. Rule 11 Sanctions

Plaintiffs have moved for sanctions pursuant to Fed.R.Civ.P. 11, alleging that Defendant's removal was presented for an improper purpose not warranted by existing law or a nonfrivolous argument for its extension. (Pl.Mot. for Sanctions Pursuant to Rule 11, at 2.) Applying the applicable standards for Rule 11 sanctions, the Court finds that sanctions are not warranted here.

Rule 11 sanctions are properly assessed when a pleading: (1) has no factual basis;

(2) is not supported by law or a reasonable argument for extending the law; or (3) is filed for an improper purpose. *Massengale v. Ray,* 267 F.3d 1298, 1301 (11th Cir.2001). Among the purposes of Rule 11 are to reduce frivolous motions and deter "costly meritless maneuvers." *Id.* at 1302. The Eleventh Circuit requires a two-step inquiry in determining whether sanctions should be granted. *Byrne v. Nezhat,* 261 F.3d 1075, 1105 (11th Cir.2001). First, a court must determine whether a party's actions are objectively frivolous; if so, a court next determines whether the person signing the pleadings should have been aware that they were frivolous. *Id.; Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir.1998).

■ Here, Defendant's actions were not objectively frivolous. As discussed above, Defendant's removal in this case was based on a theory of federal-question jurisdiction that had not yet been rejected by other federal courts in these circumstances. While Defendant has attempted removal based on numerous theories in similar litigation, those same theories were not presented in this case. Even though Defendant did not prevail in this case, that fact alone "does not mean that [a motion] is frivolous or warrants the imposition of sanctions." *Baker,* 158 F.3d at 524. In light of these circumstances, and in absence of any other evidence to show Defendant's removal was frivolous, the Court declines to award Rule 11 sanctions.

### Conclusion

Plaintiffs' Motion to Remand [7–1] is **GRANTED** and the Clerk is hereby **DIRECTED** to remand this case to the Superior Court of Fulton County, Georgia. Plaintiffs' Motion for Rule 11 Sanctions [12–1] is **DENIED.** Defendant's Motion

for Permission to File a Supplemental Memorandum of Law in Support of Opposition to Plaintiffs' Motion to Remand [24–1] is **GRANTED**. Because this case is being remanded, the Court will not address Defendant's Motion to Dismiss [2–1] or Defendant's Motion to File a Memorandum of Law in Excess of 25 Pages [3–1].

Because this Court has determined that Plaintiffs are entitled to costs and fees pursuant to 28 U.S.C. § 1447(c), the parties are **ORDERED** to attempt to reach an agreement as to the amount of costs and fees within ten days of the date this Order is docketed. The costs and fees shall be only those associated with Plaintiffs' motion to remand, and may not include those incurred pursuant to Plaintiffs' Rule 11 motion, Defendant's motion to transfer, Defendant's motion to dismiss, or other of the parties' activities with regard to this case. If the parties are unable to reach an agreement within ten days, Plaintiffs shall within those same ten days submit for this Court's approval a Bill of Costs and Attorney's Fees indicating amounts incurred to resist this improper removal. Defendant shall have five days to respond.