IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-1189
════════════
 
DaimlerChrysler Corporation, 
Petitioner,
 
v.
 
Bill Inman, David Castro, 
and John Wilkins, Each Individually and on Behalf of All Others Similarly 
Situated, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 6, 
2005
 
 
            
Justice Hecht delivered the 
opinion of the Court, in which 
Justice Wainwright, Justice 
Brister, Justice Medina, and Justice Willett joined.
 
            
Chief Justice Jefferson, 
joined by Justice O’Neill, Justice Green, and 
Justice Johnson, dissenting. 
 
 
            
Three plaintiffs have sued for themselves and a nationwide class of some 
ten million owners and lessees of DaimlerChrysler vehicles, equipped with Gen-3 
seatbelt buckles, and sold over the course of a decade. They allege that it is 
too easy to press the release button on the buckle and unlatch it without 
intending to do so. They do not contend that this is unavoidable, probable, or 
even eventual, only that it is possible. Two of the plaintiffs have never 
experienced anything like what they claim might happen, and the third is not 
sure whether he has or not, but he has never been injured. They have sued to 
have the buckles replaced with ones that are harder to unlatch. At least two 
similar class actions have been brought in other states without success.[1]
            
Of course, the risk that seatbelt buckles will be unlatched accidentally 
can be eliminated by making them more difficult to operate, but that would 
discourage people from using them at all, resulting in more injuries. In 
designing seatbelt buckles, the risk of injury from accidental release of 
easy-to-unlatch buckles must be balanced against the risk of injury from non-use 
of hard-to-unlatch buckles, for either way, there is risk. The National Highway 
Traffic Safety Administration is charged with being sure that balance is struck 
in the right place for vehicles sold throughout the country. The decision is not 
one for a jury in one state or another to make for the rest of the nation. NHTSA 
has never required that the Gen-3 buckles be recalled and replaced.
            
The trial court granted class certification. The court of appeals 
reversed and remanded for further proceedings, holding that “the trial court 
still has significant pre-certification work to do” to determine which 
jurisdictions’ laws would govern class members’ claims.[2] But the court of appeals rejected 
DaimlerChrysler’s broader argument: that the plaintiffs’ fear of possible injury 
from an accidental release of a seatbelt is so remote that they lack standing to 
assert their claims.[3] That is, DaimlerChrysler argues not 
merely that the plaintiffs’ claims will fail but that the court lacks 
jurisdiction to hear them. We agree, reverse the judgment of the court of 
appeals, and order the case dismissed.
I
            
Three NuecesCounty residents, Bill L. Inman, David 
Castro, and John Wilkins, bought Dodge vehicles manufactured by DaimlerChrysler 
Corp., equipped with Gen-3 seatbelt buckles — respectively, a new 1997 Dodge 
Caravan, a new 1995 Dodge Ram 1500, and a used 1999 Dodge Intrepid. Castro and 
Wilkins testified that they had never experienced any problems with the buckles 
and had never heard of anyone who had. Wilkins had been in one accident and the 
seatbelt worked properly. Inman testified that his seatbelt might have released 
twice when it should not have, but he was “not a hundred percent sure of this 
because [he] didn’t pay any attention at the time”. The first time, he did not 
know how he hit the release button, but “all at once” his seatbelt was loose. 
The second time, he said, he thought he bumped the button while trying to 
replace the lid on a cooler sitting between the seats of his van. He was not 
hurt or endangered either time, and he does not know of anyone who was ever 
harmed because of a Gen-3 buckle.
            
In June 2000, Inman sued DaimlerChrysler in the county court at law in 
NuecesCounty, alleging that the 
Gen-3 buckles were defective. Castro and Wilkins joined as plaintiffs in January 
2002. In depositions, the plaintiffs explained why they decided to sue even 
though they had never been hurt because of their seatbelts. Inman testified that 
he had run into his lawyer on the street, who told him “there could be a problem 
with the seatbelt”, and “some way or another [they] got around to sort of 
discussing a lawsuit.” According to Castro’s testimony, he became involved in 
this lawsuit after hearing that the seatbelts in his Dodge truck were defective 
from his cousin, an investigator working for the law firm representing Inman. 
Wilkins testified that he was informed by a friend who worked for the same firm 
that there was litigation over whether the Gen-3 buckle was defective. And so the three decided to sue on behalf of ten million vehicle 
owners and lessees across the nation.
            
In their seventh amended petition, the plaintiffs alleged that the Gen-3 
buckle is “dangerously subject to accidental release, far more dangerous than 
other buckle designs”, that it is “subject to release at any time, and 
especially in the event of a collision”, and that the buckle “design does not 
minimize the possibility of accidental release”. The plaintiffs do not contend 
that the buckle will release by itself; it must be pressed. They contend only 
that it is too easy for the button to be pressed inadvertently, either by the 
wearer or something else in the vehicle. The plaintiffs allege negligence, 
negligent misrepresentation, breach of express warranty 
that the vehicles are safe and meet all safety requirements,[4] breach of the implied warranties of 
merchantability[5] and fitness for a particular purpose,[6] and violations of the Texas Deceptive 
Trade Practices-Consumer Protection Act.[7] They do not contend that the Gen-3 
buckles made their vehicles worth less than they paid for them, and they 
expressly “do not seek damages for personal injury, property damage or death.” 
They claim damages only for the cost of replacing the buckles with ones that are 
harder to unlatch, which they “believe[] to be not in 
excess of $75 per buckle”, and any lost use while repairs are made, “believed 
not to exceed $500.00 per vehicle.” Thus, if we assume four seatbelts per 
vehicle, plaintiffs claim no more than $2,400 for themselves and no more than $8 
billion for the class.
            
DaimlerChrysler moved for summary judgment on the ground that the 
plaintiffs’ pleadings failed to state a viable cause of action. The plaintiffs 
offered evidence of the defect they allege in the Gen-3 buckles. They contended 
that the buckle design violates a Federal Motor Vehicle Safety Standard 
requiring that a “[b]uckle release mechanism shall be 
designed to minimize the possibility of accidental release.”[8] The plaintiffs offered evidence that the 
buckles failed “ball tests” used by the industry to determine the force required 
to press the release button, but they offered no 
evidence that there was any governmental requirement that the buckles pass such 
tests. They also offered evidence that DaimlerChrysler received fifty complaints 
documenting over one hundred instances when Gen-3 buckles unlatched, and that 
the buckles unlatched in two NHTSA crash tests and in crash tests conducted by 
the Canadian government and DaimlerChrysler itself, but they offered no evidence 
that any determination has ever been made that the buckles unlatched more easily 
than they should. The trial court denied DaimlerChrysler’s motion. In certifying 
the class, the court found:
 
Plaintiffs’ claims are not based on any hypothetical defect in 
the Gen-3 buckle that may, or may not, manifest itself 
in the future. Instead, Plaintiffs’ allege that the sale of Gen-3 buckles 
breached warranties and consumer remedies because each buckle was sold in 
violation of federal standards, industry standards, and Defendant’s internal 
standards and that each Gen-3 buckle has manifested this breach from the moment 
it was sold until the present.
 
 
            
The trial court certified two classes. One was for:
 
All United States resident persons (except residents of 
California or Nevada) who own or lease new vehicles, model year 1993-2002, 
manufactured and/or sold by Daimler/Chrysler and equipped with Gen-3 seat belt 
buckles ... [excluding] any person who has an action for damages for personal 
injury or death or property damage against Defendants.
 
 
The other 
class was identical except for the word “used” in place of “new”. On appeal, 
DaimlerChrysler argued that the case should be dismissed because the plaintiffs 
had not sustained any legally cognizable injury and therefore lacked standing to 
assert their claims. Alternatively, DaimlerChrysler argued that the class should 
be decertified because the trial plan adopted by the trial court was flawed and 
incomplete, the plaintiffs were inadequate class representatives, and they had 
not satisfied the predominance, superiority, and manageability requirements for 
class certification contained in Rule 42(b)(3) of the Texas Rules of Civil 
Procedure. Specifically, DaimlerChrysler argued that the trial court would be 
required to apply the laws of 48 states and adjudicate issues peculiar to 
individual class members. The court of appeals rejected DaimlerChrysler’s 
standing argument but agreed that the trial court had not fully examined what 
law should govern the class claims.[9] There it stopped; without addressing 
DaimlerChrysler’s other arguments, the court reversed the class certification 
and remanded the case for further proceedings.[10]
            
We granted DaimlerChrysler’s petition for review to consider its argument 
that the plaintiffs lack standing to assert their claims.
II
            
The parties agree that the plaintiffs cannot succeed on any of their 
claims without showing they have suffered legally compensable injury. But the 
plaintiffs argue that they need not show that they can prove the requisite 
injury until after class certification has been decided and the trial court 
reaches the merits of their claims.[11] DaimlerChrysler argues that the claimed 
injury is so hypothetical, so iffy, that the plaintiffs do not have standing to 
assert it and the court does not have jurisdiction to hear it.[12] The issue is important because courts 
must not decide hypothetical claims.[13] Practically speaking, the timing is 
important, because a disagreement over $2,400 is one thing and a disagreement 
over $8 billion is quite another.
            
A person who buys a defective product can sue for economic damages,[14] but the law is not well developed on the 
degree to which the defect must actually manifest itself before it is 
actionable. For example, in Compaq Computer Corp. v. Lapray, we observed that “the law in most states 
(including Texas) is unclear” on “whether to permit 
express warranty claims for unmanifested defects”.[15] The plaintiffs here argue that this 
issue cannot be resolved until the trial court determines whether a class should 
be certified. Nor, they say, can the court consider at this stage whether the 
defect they allege in the Gen-3 seatbelt buckle has manifested itself 
sufficiently for them to recover damages on their other claims for negligence, 
negligent misrepresentation, breach of implied warranties, or DTPA 
violations.
            
But DaimlerChrysler does not argue here that the plaintiffs’ claims 
cannot succeed (although that is certainly their position). Rather, it argues 
that whatever the plaintiffs’ causes of action may require, they have not 
suffered the kind of injury to give them standing to invoke the trial court’s 
subject-matter jurisdiction. If there is no injury sufficient for jurisdiction, 
surely there is no injury sufficient for a cause of action. But if the 
plaintiffs have no standing, the trial court has no more jurisdiction to deny their claims than it does to grant them. 
Without jurisdiction, the trial court should not render judgment that the 
plaintiffs take nothing; it should simply dismiss the case.[16]
            
The requirement in this State that a plaintiff have standing to assert a 
claim derives from the Texas Constitution’s separation of powers among the 
departments of government, which denies the judiciary authority to decide issues 
in the abstract, and from the Open Courts provision, which provides court access 
only to a “person for an injury done him”.[17] A court has no jurisdiction over a claim 
made by a plaintiff without standing to assert it.[18] For standing, a plaintiff must be 
personally aggrieved;[19] his alleged injury must be concrete and 
particularized,[20] actual or imminent, not hypothetical.[21] A plaintiff does not lack standing 
simply because he cannot prevail on the merits of his claim; he lacks standing 
because his claim of injury is too slight for a court to afford redress.
            
We have drawn this distinction in a recent case, M.D. Anderson Cancer 
Center v. Novak.[22] Attorney Novak received a form letter 
from the M.D.AndersonCancerCenter soliciting donations and stating 
that “well over 50%” of its cancer patients “return home cured”.[23] Novak did not contribute; instead, he 
sued the hospital on behalf of everyone who received the letter, alleging that 
the stated cure-rate was false and the letter therefore fraudulent.[24] This Court held that he lacked standing 
to assert his individual claim:
 
            
Even if Novak was an intended victim of a “completed” mail fraud for 
purposes of governmental prosecution, he was not actually defrauded. His lack of 
any actual or threatened injury prevents him from being “personally aggrieved” 
such that he has any personal stake in the litigation. Therefore, Novak lacks 
standing as an individual . . . .[25]
 
 
It was 
irrelevant whether M.D. Anderson’s fund-raising letter was false, or whether 
recipients might have been deceived into giving when they would not otherwise 
have done so. The point was that Novak was not himself deceived or injured, and 
therefore he did not have standing individually to assert fraud. Accordingly, we 
dismissed the entire action for want of jurisdiction.[26]
            
M.D. Anderson is different from the present case in that once 
Novak decided the letter was false, he could never be deceived and therefore 
could never be injured, other than out of concern for others. In this case, the 
plaintiffs could accidentally unlatch their Gen-3 seatbelt buckles and 
subject themselves to harm, though that has never happened to two of them and 
the third is unsure. M.D. Anderson is important because it shows that 
standing, and the concrete injury it requires, is quite 
distinct from the merits of a claim and the injury required to prove it.
            
Two decisions from the Fifth Circuit illustrate this point. In Rivera 
v. Wyeth-Ayerst Laboratories, Rivera used Duract, 
a prescription painkiller manufactured by Wyeth.[27] Wyeth had instructed that the drug 
should not be used for more than ten days generally and not by anyone with 
preexisting liver conditions.[28] Over the course of a year, before Wyeth 
voluntarily withdrew Duract from the market, twelve 
users reportedly suffered liver failure.[29] Eleven of them had used the drug for 
more than ten days, and the twelfth had a history of liver disease.[30] Although Rivera suffered no physical or 
emotional harm herself, she sued for a refund of the purchase price on behalf of 
all other users of the drug who also had not been harmed, alleging that the 
product was defective.[31] She sued only for breach of an implied 
warranty of merchantability and sought only economic damages.[32] The court concluded that the kind of 
injury Rivera alleged did not give her standing to sue.[33] Accordingly, it dismissed the action for 
want of jurisdiction.
            
Contrast Rivera with Cole v. General Motors Corp.[34] There, GM determined that a defect in 
side-impact-air-bag sensing modules would improperly trigger inflation. As the 
court explained:
 
GM sent a voluntary recall notice to all DeVille record owners and lessees explaining that 
GM
 
has 
decided that a defect which relates to motor vehicle safety exists and may 
manifest itself in your 1998 or 1999 model year Cadillac DeVille. [GM] ha[s] learned of a condition that can cause 
the side impact air bags in your car to deploy unexpectedly, without a crash, as 
you start your car or during normal driving.
 
            
GM indicated that it had received 306 reports of inadvertent deployment 
out of approximately 224,000 affected vehicles.[35]
 
 
Three 
plaintiffs sued for economic damages because repairs to the vehicles were 
unreasonably delayed. GM argued that they lacked standing, based on 
Rivera. The court disagreed.[36]
            
An important difference between these two cases is that the Cole 
plaintiffs alleged a defect that would cause GM’s side-impact air bags to deploy 
by itself unexpectedly during normal operation, something GM conceded in its 
voluntary recall, while the Rivera plaintiffs alleged a defect in 
medication which had caused injury only when taken by someone contrary to 
Wyeth’s instructions. In Cole, injury was a matter of time; in 
Rivera, it might never happen. The air bags in Cole’s vehicle might 
deploy improperly regardless of what she did, just as they might in the other 
vehicles in which they were installed. Taking Duract 
had not hurt Rivera, and there was almost no chance that the defect she alleged 
in the drug ever would injure her, given that she was fully aware of the 
restrictions on its use.
            
Any possibility of injury to the plaintiffs in the present case is even 
more remote than it was in Rivera. There, Wyeth received twelve 
complaints over a year before it voluntarily withdrew the drug from the market. 
Here, according to the plaintiffs themselves, DaimlerChrysler received only 
fifty complaints from ten million vehicle owners and lessees over ten years — 
five per year, one for every 200,000 owners and lessees. By comparison, in 
Cole, GM received 306 reports in two years, one for every 732 owners and 
lessees. In any event, evidence of such complaints cannot prove defect.[37] The plaintiffs contend that ball tests 
showed how easily the Gen-3 buckle release button could be pressed and that 
crash tests showed that the buckle could somehow be unlatched, but there is 
nothing to indicate that the design of the buckle failed to minimize the risk of 
accidental release versus the risk of non-use so as to pose any concrete threat 
of injury to the plaintiffs.
            
The dissent criticizes us for assuming that Texas law governs, but it 
unquestionably does — over the issue of standing, a part of subject-matter 
jurisdiction, which is the only issue we decide. The dissent argues that we have 
improperly focused our standing analysis on the plaintiffs’ claims rather than 
on the plaintiffs themselves, but that is incorrect. We do not rule out the 
possibility that somewhere there may be owners or lessees of vehicles with Gen-3 
seatbelt buckles that can allege concrete injury. Our focus is on Inman, Castro, and Wilkins, and they have not shown that 
they can. The dissent argues that standing requires only, one, a real 
controversy that, two, will be determined. Those are requirements for 
standing,[38] but so is concrete injury, because if 
injury is only hypothetical, there is no real controversy.[39] The dissent argues essentially that our 
conclusion that the plaintiffs lack standing is nothing more than a summary 
judgment on the merits of their claims, that we have “equate[d] standing with an 
unsuccessful claim”,[40] but this is simply wrong. We agree that 
the allegations in Cole gave the plaintiff standing, regardless of 
whether she could prevail on the merits of her claim, and even though the Fifth 
Circuit denied class certification.[41] We do not render judgment that the 
plaintiffs take nothing, as we would if their claims failed on the merits; we 
dismiss the case for want of jurisdiction. We do not decide the degree to which 
a defect must manifest itself in a product before a warranty is breached. 
Standing in this case is a separate inquiry, just as it was in M.D. 
Anderson and Rivera.
            
Both of those cases show that when a claim of injury is extremely remote, 
the jurisdictional inquiry cannot be laid aside in an expectation that the 
claimant will also lose on the merits. A court that decides a claim over which 
it lacks jurisdiction violates the constitutional limitations on its authority, 
even if the claim is denied. As the United States Supreme Court has warned, the 
denial of a claim on the merits is not an alternative to dismissal for want of 
jurisdiction merely because the ultimate result is the same because the 
assertion of jurisdiction “carries the courts beyond the bounds of authorized 
judicial action and thus offends fundamental principles of separation of 
powers.”[42]
            
The dissent charges that our decision “suggests a visceral distaste of 
class actions”. We disagree. We simply think that the rights of ten million 
vehicle owners and lessees across the United States should not be 
adjudicated in an action brought by three plaintiffs who cannot show more than 
the merest possibility of injury to themselves. To hold that Inman, Castro, and 
Wilkins have standing would drain virtually all meaning from the requirements 
that a plaintiff must be “personally aggrieved” and that his injury must be 
“concrete” and “actual or imminent”.
* * * * *
            
If the named plaintiffs in a putative class action do not have standing 
to assert their own individual claims, the entire action must be dismissed.[43] Accordingly, the judgment of the court 
of appeals is reversed and the case is dismissed for want of jurisdiction.
 
                                                                        
_________________  
                                                                        
Nathan L. Hecht
                                                                        
Justice
 
 
Opinion delivered: February 1, 
2008








[1] 
Quacchia v. DaimlerChrysler Corp., 19 
Cal. Rptr. 3d 508 (Cal. Ct. App. 2004) (affirming the 
trial court’s refusal to certify a class); Hiller v. DaimlerChrysler 
Corp., No. 02-681, 2007 Mass. Super. LEXIS 442, 2007 WL 
3260199 (Mass. 
Super. Ct. Sept. 25, 2007) (refusing class 
certification). In remanding Hiller to state court after removal, the 
United States District Court could not help but observe that “plaintiffs’ 
lawsuit appears to be as manufactured as defendant’s cars”. Hiller v. DaimlerChrysler Corp., No. Civ.A. 02-10533-RWZ, 2004 U.S. Dist. LEXIS 4578, at *3, 2004 WL 574331 (D. 
Mass. Mar. 23, 
2004). Two other state court class actions have been removed and remanded. 
Coker v. DaimlerChrysler Corp., 220 F. Supp. 2d 1367 (N.D. Ga. 2002); Sylvester v. DaimlerChrysler Corp., No. 
1:02CV0567, 2002 U.S. Dist. 
LEXIS 17989, 2002 WL 32005242 (N.D. Ohio Mar. 25, 2002).

[2] 
121 S.W.3d 862, 886 (Tex. App.–Corpus Christi 2003).

[3] 
Id. at 
885.

[4] 
See Tex. Bus. & Com. Code § 
2.313.

[5] 
Id. § 
2.314.

[6] 
Id. § 
2.315.

[7] 
Id. §§ 
17.41-.63.

[8] 
49 C.F.R. § 571.209 S4.1(e).

[9] 
121 S.W.3d 862, 885-886 (Tex. App.–Corpus Christi 2003) . 

[10] Id.

[11] See Intratex Gas Co. v. Beeson, 22 S.W.3d 398, 404 
(Tex. 2000) (“Deciding the merits of the suit in order to determine the scope of 
the class or its maintainability as a class action is not appropriate. . . . 
However, in determining whether the class-certification requirements have been 
satisfied, the trial court may look beyond the pleadings.”); see also 
Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (“In determining the 
propriety of a class action, the question is not whether the plaintiff or 
plaintiffs have stated a cause of action or will prevail on the merits, but 
rather whether the requirements of [the procedural rule governing class actions] 
are met.” (quoting Miller v. Mackey Int’l, 452 F.2d 424 (5th Cir. 
1971))).

[12] See Texas Ass’n of Bus. v. Tex. Air Control 
Bd., 852 S.W.2d 440, 444 (Tex. 1993) (“An opinion issued in a case 
brought by a party without standing is advisory because rather than remedying an 
actual or imminent harm, the judgment addresses only a hypothetical 
injury.”).

[13] See id.

[14] E.g. Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 443-445 (Tex. 1989).

[15] 135 S.W.3d 657, 679 (Tex. 2004) (footnote 
omitted). Cf. Collins v. DaimlerChrysler Corp., 894 So.2d 988 
(Fla. Dist. Ct. App. 2004) (holding that plaintiff’s complaint that the value of 
her car was less because it was equipped with Gen-3 seatbelt buckles is 
actionable under the state consumer protection law even though the alleged 
defect has never manifest itself in an emergency or caused damages).

[16] See, e.g., Martinez v. 
Second Injury Fund of Tex., 789 S.W.2d 267, 277 (Tex. 1990) (Hecht, J., 
dissenting) (“Rendition of judgment on the merits is inappropriate in an action 
over which the trial court lacks jurisdiction.”); West v. Brenntag Sw., Inc., 168 S.W.3d 327, 339 (Tex. 
App.–Texarkana 2005, pet. denied) (“Having found that West lacked standing to 
sue for negligence or nuisance, the judgment as to those claims is reversed and 
judgment is rendered that those claims be dismissed for want of jurisdiction. 
The judgment as to the remaining claims is reversed and judgment is rendered 
that West take nothing.”).

[17] Texas Ass’n of Bus., 852 S.W.2d at 
444; Tex. Const. art. 
I, § 13 (“All courts shall be open, and every person for an injury done him, in 
his lands, goods, person or reputation, shall have remedy by due course of 
law.”).

[18] Texas Ass’n of Bus., 852 S.W.2d at 
444.

[19] Nootsie, Ltd. v. Williamson County Appraisal 
Dist., 925 S.W.2d 659, 661 (Tex. 1996) (“A plaintiff has standing when it 
is personally aggrieved.”).

[20] Brown v. Todd, 53 S.W.3d 297, 305 
(Tex. 2001) (stating that for a plaintiff to 
have standing he “‘must establish that he has a “personal stake” in the alleged 
dispute’ and that the injury suffered is ‘concrete and particularized’”, quoting 
Raines v. Byrd, 521 U.S. 811, 819 (1997), citing Lujan v. 
Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)).

[21] Texas Ass’n of Bus., 852 S.W.2d at 
444.

[22] 52 S.W.3d 704 (Tex. 2001).

[23] Id. at 706.

[24] Id.

[25] Id. at 707-708 (citations and emphasis 
omitted).

[26] Id. at 711.

[27] 283 F.3d 315, 316-317 
(5th Cir. 2002).

[28] Id. at 316-317.

[29] Id. at 317.

[30] Id.

[31] Id. at 317, 319-320.

[32] Id. at 319-320.

[33] Id. at 321-322.

[34] 484 F.3d 717 (5th Cir. 2007).

[35] Id. at 718-719.

[36] Id. at 722-723.

[37] Nissan Motor Co. v. Armstrong, 145 
S.W.3d 131, 140 (Tex. 2004) (“we have never held that mere 
claims of previous accidents can prove a product is defective”).

[38] Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 849 (Tex. 2005); Nootsie, 
Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 662 (Tex. 1996); Texas Ass’n of 
Bus. v. Tex. Air 
Control Bd., 852 S.W.2d 440, 446(Tex. 1993).

[39] Texas Ass’n of Bus., 852 S.W.2d at 
444.

[40] Ante at ___.

[41] 484 F.3d 717, 730 (5th Cir. 
2007).

[42] Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 94 (1998).

[43] M.D. Anderson Cancer Ctr. v. Novak, 
52 S.W.3d 704, 711 (Tex. 2001) (“Accordingly, if the named 
plaintiff lacks individual standing, the court should dismiss the entire [class 
action] suit for want of jurisdiction.”).